OPINION
{¶ 1} Defendants-appellants, Regina D'Amore, Christine Dabramo and Rebecca Keith-Jones appeal from a judgment of the Franklin County Court of Common Pleas which denied their motion for summary judgment, granted the summary judgment motion of plaintiffs-appellees, Ronald E. Matthews, Trustee of the J. Harvey Crow Trust u/a dated December 13, 2003 ("Crow Trust"), and John MacDonald, and granted plaintiffs' motion to strike defendant D'Amore's affidavit in support of defendants' motion for summary judgment. Because the trial court properly granted summary judgment to plaintiffs, properly denied defendants' motion for summary judgment, and properly granted plaintiffs' motion to strike D'Amore's affidavit, we affirm.
 {¶ 2} For decades prior to 1998, J. Harvey Crow owned approximately 90 acres of mostly undeveloped land near the city of Brecksville, in Cuyahoga County, Ohio ("Property"). Crow and MacDonald met in 1992. Between 1996 and 1998, MacDonald and Crow met 30-40 times to discuss ways in which they might develop the Property with residential and commercial construction. The two ultimately decided that they would form a limited liability company ("LLC") to develop the Property, that Crow would contribute the Property to the LLC, and that MacDonald would contribute capital to the LLC, obtain investors and tenants, and procure financing to pay off the Property's debts. According to MacDonald, he and Crow were to be the only members of the LLC.
 {¶ 3} D'Amore was Crow's friend, and the two sometimes resided together. Keith-Jones was a commercial realtor. D'Amore and Keith-Jones attended only one of the Crow-MacDonald meetings concerning the formation of the LLC. Dabramo (the nature of whose relationship to Crow was not clearly established) did not attend any of the meetings. According to MacDonald, the defendants' only role regarding the Property was to procure tenants in exchange for a commission; defendants were not to obtain any membership interest in the LLC.
 {¶ 4} On May 7, 1998, defendants signed and filed Articles of Organization for an LLC named Parkwood Place with the Ohio Secretary of State. Therein, defendants stated that they were "desiring to form a limited liability company, under Chapter 1705 of the Ohio Revised Code." The preprinted instructions accompanying the Articles of Organization state, in part, that "[a]rticles will be returned unless accompanied by a written appointment of agent signed by all or a majority of the members of the limited liability company * * *." Also, on May 7, 1998, defendants signed and filed an Original Appointment of Agent with the Ohio Secretary of State, naming Crow as statutory agent for Parkwood Place. The Original Appointment of Agent states that defendants, as the "undersigned," are "at least a majority of the members" of Parkwood Place. The preprinted word ("member") appears beneath each of defendants' signatures. The preprinted instructions accompanying the Original Appointment of Agent state, in part, that "[a]n original appointment of agent form must be signed by at least a majority of the members of the limited liability company." Crow prepared both the Articles of Organization and the Original Appointment of Agent.
 {¶ 5} In June 1998, Crow transferred the property, by general warranty deed, to the LLC. Since that time, Parkwood Place has owned the property.
 {¶ 6} On February 5, 1999, MacDonald and Crow executed a document entitled "Operating Agreement of Parkwood Place, Ltd." Article 2, Section 2.1 of the operating agreement states that the names and addresses of the members are set forth on "Schedule A" attached to the operating agreement. "Schedule A" provides spaces for the members' names, addresses, and capital contributions; however, the spaces are left blank. Article 2, Section 2.2 states that all of the authority of the LLC will be exercised by or under the direction of a management company consisting initially of two managers, Crow and MacDonald.
 {¶ 7} Article 3, Section 3.2 of the operating agreement states that MacDonald entered into a separate agreement, "Exhibit B" (which is incorporated by reference into the operating agreement), setting forth the duties and responsibilities of "each of the two members" of the LLC. "Exhibit B" sets forth a detailed outline of Crow's and MacDonald's interests in, and obligations to, Parkwood Place. More particularly, "Exhibit B" provides that MacDonald initially contributed $25,000 in cash to Parkwood Place and in exchange received 1,000 membership units. "Exhibit B" further provides that MacDonald had procured a 1.35 million dollar bank loan to pay off liens on the property, secured by a mortgage on the property and a promissory note signed by Parkwood Place, MacDonald, and Crow. According to "Exhibit B," MacDonald was to secure investors to pay off the loan for which he would receive an additional 6,000 membership units. "Exhibit B" also provides that Crow initially contributed the property to Parkwood Place and in exchange received 300,000 membership units. "Exhibit B" also sets forth how the LLC's profits would be distributed between Crow and MacDonald. Crow and MacDonald signed the operating agreement as "Members." The operating agreement does not list defendants as members nor is it signed by defendants.
 {¶ 8} The financing arrangement referenced in "Exhibit B" was memorialized in an agreement dated April 24, 1999, which is signed by Crow and MacDonald as "Managing Member[s]" of Parkwood Place. The promissory note was signed by MacDonald and Crow in their individual capacities, and by Crow as "Managing Member" of Parkwood Place. The mortgage was signed by Crow as "Managing Member" of Parkwood Place.
 {¶ 9} On December 13, 2003, the Crow Trust was created. Matthews, Crow's grandson, was named trustee. Crow transferred his entire interest in Parkwood Place to the trust. Crow passed away on August 18, 2004.
 {¶ 10} On August 23, 2004, at defendants' direction, defendants' attorney filed a "Statutory Agent Update" with the Ohio Secretary of State naming himself as the new statutory agent for Parkwood Place. On September 28, 2004, defendants' attorney wrote to Patrick Flanagan, counsel for Parkwood Place, asserting that defendants were the only members of the LLC and that Crow had taken certain actions with regard to Parkwood Place that he was without authority to perform, as he was not a member of the LLC.
 {¶ 11} On December 8, 2004, plaintiffs filed a "Verified Complaint for Monetary Damages, Declaratory Relief, and Injunctive Relief" in the Franklin County Court of Common Pleas, asserting three causes of action. First, plaintiffs sought a declaratory judgment that they, and not defendants, are the only members of the Ohio limited liability company known as Parkwood Place, Ltd. ("Parkwood Place" or "LLC"). Second, plaintiffs sought monetary damages resulting from defendants' alleged fraudulent conduct in holding themselves out to be members of the LLC. Third, plaintiffs sought monetary damages resulting from defendants' alleged tortious interference in plaintiffs' contracts and business relationships arising out of plaintiffs' membership in the LLC. Plaintiffs contemporaneously filed a motion for an ex parte temporary restraining order ("TRO") and a preliminary injunction.
 {¶ 12} Pursuant to plaintiffs' motion, the trial court issued a TRO against defendants, enjoining them from: (1) interfering with plaintiffs' ownership interest in the LLC; (2) interfering with any business of the LLC; (3) interfering in any pending or future legal proceedings involving the LLC; (4) interfering with any agreements or business relationships of the LLC; and (5) taking any actions or otherwise representing to any third party that defendants possess any ownership interest in the LLC. The trial court set plaintiffs' motion for preliminary injunction for hearing before a magistrate.
 {¶ 13} Thereafter, defendants filed a motion to change venue to Cuyahoga County. Via judgment entry filed February 3, 2005, the trial court denied the motion, finding venue to be proper in Franklin County.
 {¶ 14} Following a three-day evidentiary hearing on plaintiffs' motion for a preliminary injunction, the magistrate, on January 31, 2005, filed a decision denying the motion. Plaintiffs filed timely objections to the magistrate's decision.
 {¶ 15} The parties filed cross-motions for summary judgment, and defendants filed a Civ.R. 12(B)(6) motion to dismiss plaintiffs' verified complaint. By decision and entry filed April 19, 2005, the trial court denied the cross-motions for summary judgment as well as defendants' motion to dismiss.
 {¶ 16} Thereafter, plaintiffs and defendants filed renewed motions for summary judgment. The parties agreed that there are no disputed factual issues and that either plaintiffs or defendants are entitled to judgment as a matter of law on the determinative issue in the case, i.e., the identity of the members of Parkwood Place. The pleadings establish that the Property owned by Parkwood Place is valued in excess of $7 million. Plaintiffs supported their motion with the transcript from the January 2005 preliminary injunction hearing and the trial transcript from a 2003 action filed by Crow against D'Amore in the Summit County Court of Common Pleas. Defendants supported their motion with, inter alia, D'Amore's affidavit and a 1995 agreement that is the subject of the affidavit. Plaintiffs moved to strike D'Amore's affidavit and the 1995 agreement.
 {¶ 17} By decision and entry filed November 17, 2005, the trial court granted plaintiffs' motion to strike D'Amore's affidavit and the attendant 1995 agreement, granted plaintiffs' motion for summary judgment, and denied defendants' motion for summary judgment. The trial court found that plaintiffs were entitled to judgment as a matter of law on the determinative issue in the case, i.e., the identity of the members of Parkwood Place. In so finding, the court considered only the pleadings and the transcript of the evidence at the preliminary injunction hearing.
 {¶ 18} In accordance with R.C. 2721.01 and Civ.R. 57, the court declared that plaintiffs are the only members of Parkwood Place and that defendants, individually and/or collectively, possess no rights or membership interest therein. The trial court's judgment entry included Civ.R. 54(B) language. Thereafter, on February 2, 2006, plaintiffs, pursuant to Civ.R. 41(A), voluntarily dismissed their remaining claims of fraud and tortious interference.
 {¶ 19} Defendants have timely appealed the trial court's November 17, 2005 judgment, advancing the following 14 assignments of error:
1. The trial court erred in striking the affidavit of Regina D'Amore, which was made upon personal knowledge; while at the same time relying upon inadmissible testimony of the plaintiffs as to the intentions of the decedent, J. Harvey Crow.
2. The trial court erred in striking a 1995 agreement between D'Amore and the decedent on the basis of relevance when, by its terms, the agreement was specifically entered into in anticipation of the formation of Parkwood Place, LLC.
3. The trial court erred in relying on an older version of the Ohio LLC statute governing formation of LLCs which is materially different than that actually in effect at the time Parkwood Place, LLC was formed.
4. The trial court erred in finding that defendants only executed Parkwood Place, LLC's Articles of Organization and original Appointment of Agent as "authorized persons" when they were clearly identified in the original Appointment of Agent as its "members," merely because the statute in effect at the time permitted members or their authorized agents to form an LLC.
5. The trial court erred in analogizing "membership" in an LLC with being an "incorporator" of a corporation, for purposes of assessing the legal significance of the LLC's Articles of Organization and original Appointment of Agent.
6. The trial court erred in inferring without any evidence that defendants were designated as "members" in the original Appointment of Agent of Parkwood Place solely because the decedent, Mr. Crow apparently misunderstood the forms he was using, when all of the admissible documentary evidence showed that Mr. Crow well understood the legal significance of his actions.
7. The trial court erred in finding that defendants made "no contribution" to Parkwood Place, LLC when the record is replete with evidence of their contributions.
8. The trial court erred in finding that defendants made "no contribution" to Parkwood Place, LLC, because — unlike under Ohio corporations law — the form of contribution to an LLC may be in property, services rendered, or future services.
9. The trial court confused the concept of owning a membership interest in an LLC with the concept of membership in the LLC.
10. The trial court erred in finding that plaintiff Ronald Matthews is "trustee" of a trust formed by the decedent J. Harvey Crow months prior to his death, without ever presenting the original — or even a copy — of any declaration of trust, trust agreement or other instrument demonstrating this alleged "fact" to be true.
11. The trial court erred by resolving a credibility dispute between the parties to the case and awarding ownership of Parkwood Place, LLC (and thus of its 94 acres of real estate) to plaintiffs.
12. The trial court erred in denying defendants' motion to dismiss because the complaint failed to state a claim for which relief may be granted.
13. The trial court erred in acquiring jurisdiction of the case based solely upon the fact that Parkwood Place LLC's Articles and Original Appointment of Agent were filed there.
14. The trial court erred in failing to rule on the parties' objections to the magistrate's decision, as is required under Civil Rule 53.
 {¶ 20} As defendants' first and second assignments of error are interrelated, we will address them together. Defendants contend the trial court erred in striking D'Amore's affidavit, along with the 1995 agreement attached thereto, which were submitted in support of defendants' renewed motion for summary judgment. We disagree.
 {¶ 21} Defendants maintain that the 1995 agreement, which was handwritten by Crow, anticipates the later formation of Parkwood Place and describes D'Amore's contribution, compensation, management and ownership interest in that entity both before and after its formation.
 {¶ 22} The 1995 agreement provides as follows:
J. Harvey Crow has a controlling interest in certain parcels of land and hereby agrees with Regina D. D'Amore as follows:
1. Regina D. D'Amore shall be executive vice president of any and all legal entities that own, control, operate and develop the real estate described in Exhibit "A" attached hereto, made a part hereof as if fully rewritten herein.
2. Regina D. D'Amore shall spend her entire time beginning Sept 15-1995 until the projects set out in Exhibit A are completed and shall contribute $300,000 in property, cash or services.
3. Regina's compensation for her services shall be her contribution of her services amounting to $300,000.00 for the first three years and any continuance shall be at the same rate.
4. Regina shall be in charge of sales and other services as to be outlined by J. Harvey Crow who is the primary consultant of these projects. She shall aid and assist in the promotion of all projects.
5. The [$]300,000 contribution shall be paid to her when ever all other contributions including J. Harvey Crow is paid and in addition Regina shall have a vested interest in the profits that are derived from the operation in equal amounts with J. Harvey Crow which shall not be less than 15%. Said profits shall be distributed when each project is completed and distribution is made to others and similar profit sharing is paid to them.
6. Regina, J. Harvey Crow and others shall be reimbursed for out of pocket expenses made for the promotion of these projects whenever the cash flow justifies this payment.
7. Regina shall make decisions for the benefit of the project subject to the approval of J. Harvey Crow.
 {¶ 23} "Exhibit A," attached to the agreement, delineates the "projects" referenced in the agreement. One of those "projects" is "[t]he sale or development of 59 acres zoned for retail or commercial along and North of Miller Road, both in Brecksville, Ohio."
 {¶ 24} D'Amore avers in paragraph 2 of her affidavit that she and Crow executed the agreement on September 15, 1995. In paragraph 3, D'Amore states that the document reflects her understanding of the agreement with Crow, i.e., that she was to be "executive vice president" of any entities that would own various real property, including the Property now owned by Parkwood Place, and that Crow intended that she operate those entities. In paragraph 4, D'Amore avers that she, Dabramo and Keith-Jones are the "original and only members" of Parkwood Place. Paragraph 5 states that MacDonald was never admitted as a member of Parkwood Place and that his only involvement with the LLC was to assist Crow in obtaining financing in order to remove a lien against the Property.
 {¶ 25} Civ.R. 56(E) mandates that affidavits be made upon the personal knowledge of the affiant and set forth facts that would be admissible in evidence. Stamper v. Middletown Hosp. Assn.
(1989), 65 Ohio App.3d 65, 69; Tolson v. Triangle Real Estate,
Franklin App. No. 03AP-715, 2004-Ohio-2640, at ¶ 10. Affidavits that are not based upon personal knowledge or that set forth legal conclusions or opinions without stating supporting facts are insufficient to meet the requirements of Civ.R. 56(E).Stamper; Tolson; at ¶ 12; Szkatulski v. Bank One, N.A.,158 Ohio App.3d 189, 2004-Ohio-3981, at ¶ 10; Niermeyer v. Cook'sTermite Pest Control, Inc., Franklin App. No. 05AP-21,2006-Ohio-640, at ¶ 32. A trial court's decision to grant a motion to strike will not be overturned on appeal absent an abuse of discretion. Samadder v. DMF of Ohio, Inc.,154 Ohio App.3d 770, 2003-Ohio-5340, at ¶ 17; Niermeyer.
 {¶ 26} The trial court granted plaintiffs' motion to strike the affidavit on the basis that it failed to set forth facts that would be admissible in evidence. More particularly, the court characterized the 1995 agreement as a "personal-services" contract between Crow and D'Amore that does not constitute evidence of D'Amore's membership in Parkwood Place, as the agreement pre-dated the formation of the LLC by three years and did not even mention Parkwood Place. Thus, the court struck paragraphs 2 and 3 of the affidavit on relevancy grounds. The court struck paragraph 3 for the additional reason that it consists of inadmissible hearsay in the form of D'Amore's statements about what Crow agreed or intended. The court struck paragraphs 4 and 5 on the basis they both set forth only legal conclusions without supporting facts.
 {¶ 27} We cannot find that the trial court abused its discretion in striking the affidavit and the 1995 agreement. The agreement is irrelevant to the issues involved in this litigation, as it does not constitute evidence of D'Amore's (or the two other defendants') membership in Parkwood Place. The agreement pre-dates the formation of Parkwood Place by three years, does not mention Parkwood Place, and does not include the words "member" or "membership interest." Indeed, D'Amore is identified only as "executive vice president." Further, paragraph 3 of the affidavit constitutes inadmissible hearsay regarding Crow's statements and intentions, and paragraphs 4 and 5 contain only unsupported legal conclusions as to the determinative issue in the case, i.e., the identity of the members of Parkwood Place. Accordingly, the trial court did not abuse its discretion by granting plaintiffs' motion to strike. The first and second assignments of error are overruled.
 {¶ 28} Defendants' third, fourth, fifth, sixth, seventh, eighth, ninth, and eleventh assignments of error challenge, on various grounds, the trial court's grant of summary judgment to plaintiffs on the substantive issue in the instant case, i.e., the identity of the members of the LLC known as Parkwood Place. As such, we will consider them jointly.
 {¶ 29} Civ.R. 56(C) provides, in part, that:
Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
 {¶ 30} Thus, pursuant to Civ.R. 56(C), summary judgment is appropriate only where the evidence demonstrates that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence mostly strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. State ex rel.Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181,183. An appellate court reviews a summary judgment disposition de novo and we apply the same standard as that used by the trial court. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. As a result, this court stands in the shoes of the trial court and conducts an independent review of the record. Welsh v.Estate of Cavin, Franklin App. No. 02AP-1328, 2004-Ohio-62, at ¶21.
 {¶ 31} As noted previously, the dispositive issue presented in the parties' cross-motions for summary judgment is the identity of the members of the LLC known as Parkwood Place. Limited liability companies are governed by R.C. Chapter 1705. R.C. 1705.01(G) provides that a "member" of a limited liability company is "a person whose name appears on the records of the limited liability company as the owner of a membership interest in that company." "Membership interest" is defined by R.C.1705.01(H) as "a member's share of the profits and losses of a limited liability company and the right to receive distributions from that company."
 {¶ 32} It is well-settled that "[t]he paramount consideration in determining the meaning of a statute is legislative intent."State v. Jackson, 102 Ohio St.3d 380, 2004-Ohio-3206, at ¶ 34, citing State ex rel. Asberry v. Payne (1998), 82 Ohio St.3d 44,47. To determine such intent, a court must first look at the words of the statute itself. "It is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly." Provident Bank v.Wood (1973), 36 Ohio St.2d 101, 105-106, citing Sears v.Weimer (1944), 143 Ohio St. 312. A court must also bear in mind that "[s]tatutes concerning the same subject matter must be construed in pari materia." In re C.W., 104 Ohio St.3d 163,2004-Ohio-6411, at ¶ 7, citing In re Hayes (1997),79 Ohio St.3d 46, 48. With these principles in mind, we conclude, reading R.C. 1705.01(G) and (H) in pari materia, that to be a "member" of a limited liability company, a person's name must appear on the company records as one who shares in the company's profits and losses and has a right to receive distributions from the company.
 {¶ 33} Here, the evidence submitted on the parties' cross-motions for summary judgment establishes that the only persons whose names appear on Parkwood Place's company records as sharing in the company's profits and losses and having a right to receive distributions from the company are Crow and MacDonald. As noted previously, the February 5, 1999 operating agreement sets forth a detailed outline of Crow's and MacDonald's interests in, and obligations to, Parkwood Place. More particularly, the operating agreement reveals that MacDonald received 1,000 membership units in the company in exchange for his $25,000 cash contribution, and that Crow received 300,000 membership units in exchange for his contribution of the property. The operating agreement also provides that MacDonald would receive an additional 6,000 membership units if he was successful in securing investors to pay off the property's debts. In addition, the operating agreement sets forth a detailed discussion of how Crow and MacDonald would share in Parkwood Place's profits and losses as well as their right to receive distributions from the company.
 {¶ 34} Defendants assert that the evidence establishes at least a genuine issue of material fact as to the identity of the members of Parkwood Place. Defendants point to the Articles of Organization and the Original Appointment of Agent form, both of which were signed by defendants (with the Original Appointment of Agent form signed by defendants as "members"), as company records evidencing their membership interest in Parkwood Place. While those documents might arguably qualify as company records, neither of them state that defendants have a right to share in Parkwood Place's profits and losses or receive distributions from the LLC. Defendants' contention that one becomes a "member" of a limited liability company just by signing the Articles of Organization and/or the Original Appointment of Agent form completely ignores the definition of "membership interest" set forth in R.C. 1705.01(H).
 {¶ 35} Moreover, pursuant to defendants' argument, neither Crow, who owned and transferred the property (valued at over $7 million) nor MacDonald, who made a cash contribution of $25,000, would be considered "members" of the LLC. Defendants' contention is unreasonable. It is well-settled that statutes should not be construed to yield an unreasonable or absurd result.Delahoussaye v. Ohio State Racing Comm., Franklin App. No. 03AP-954, 2004-Ohio-3388, at ¶ 14.
 {¶ 36} Our conclusion is bolstered by recent decisions from this court, which have concluded that a limited liability company's operating agreement — and not the Articles of Organization and/or the Original Appointment of Agent — determine the actual membership in, and other rights, responsibilities, and/or liabilities of, an Ohio limited liability company.
 {¶ 37} For example, in McConnell v. Hunt Sports Ents.
(1999), 132 Ohio App.3d 657, 688-689, this court discussed the importance of the operating agreement in Ohio's limited liability company statutory scheme:
"Operating agreement" is defined in R.C. 1705.01(J) as all of the valid written or oral agreements of the members as to the affairs of a limited liability company and the conduct of its business. R.C. 1705.03(C) sets forth the various activities limited liability companies may engage in and indicates that such are subject to the company's articles of organization and operating agreement. Indeed, many of the statutory provisions inR.C. Chapter 1705 governing limited liability companies indicatethat they are, in various ways, subject to and/or dependent uponrelated provisions in an operating agreement. See, for example,R.C. 1705.11, 1705.12, 1705.13, 1705.15, 1705.16, 1705.18,1705.22, 1705.24, 1705.25, 1705.26, 1705.29, 1705.31, 1705.40,1705.43, 1705.44, and 1705.46.
Id. at 688-689. (Emphasis added.)
 {¶ 38} The McConnell court also confirmed that it is a person's name appearing on the records of the limited liability company, such as the operating agreement, as the owner of a membership interest in the company that confers legal "membership" upon that person, and not merely having been named in the Articles of Organization, or otherwise having been named on or omitted from a "Member" schedule to an operating agreement:
As a preliminary matter, we note that the trial court erred in concluding appellant was not a member of CHL prior to executing the operating agreement. R.C. 1705.01(G) states that a member of a limited liability company is a person whose name appears on the records of the company as the owner of a membership interest in that company. * * *
* * *
Appellant is identified on Schedule A and is credited with a capital contribution of $25,000 and as having twenty-five units. Appellant made such capital contribution on November 12, 1996. Therefore, pursuant to the Ohio Revised Code and the operating agreement, appellant was a member of CHL from its inception even though appellant did not execute a copy of the operating agreement until June 6, 1997. * * *
Id. at 684-685.
 {¶ 39} This court also confirmed that, pursuant to R.C.1705.14(A), a person may become a member either at the time the limited liability is formed or at any time that is specified in the records of the company for becoming a member. In the instant case, that time specified in the company records for becoming a member is clearly February 5, 1999, when Crow and MacDonald executed the operating agreement, which delineated their right to share in the profits and losses and receive distributions.
 {¶ 40} Further, in McDonald v. Miller (Mar. 29, 2001), Franklin App. No. 00AP-994, this court confirmed that it is the language of the operating agreement, not the Articles of Organization or the Original Appointment of Agent, that confers legal membership on a person:
The narrow issue we address is whether appellant was a member of METSS. * * *
A review of the operating agreement for METSS shows the language to be clear and unambiguous. * * *
* * *
[T]he plain language of the operating agreement established that appellant was a member of METSS at some point in time. * * *
Id.
 {¶ 41} Having determined that the evidence of record fails to demonstrate a genuine issue of material fact as to the dispositive issue in this case, i.e., the identity of the members of Parkwood Place, and that plaintiffs are entitled to judgment as a matter of law on this issue, we need only briefly address the various arguments raised by defendants in support of their contention that they are the sole members of Parkwood Place.
 {¶ 42} Several of defendants' arguments concern the trial court's alleged errors involving the Articles of Organization and the Original Appointment of Agent. For instance, defendants assert in the third assignment of error that the trial court erred in citing the wrong version of R.C. 1705.04, the statute governing the Articles of Organization. The version cited by the trial court stated, in pertinent part, that "[t]wo or more
persons * * * may form a limited liability company. The entity
is formed when one or more persons or their authorized representative signs and files with the secretary of state articles of organization that set forth all of the following * * *." R.C. 1705.04(A); (emphasis added). However, the version applicable on May 7, 1998 (the date on which defendants signed and filed the Articles of Organization and Original Appointment of Agent), provided, in relevant part, that "one or more
persons * * * may form a limited liability company. The company
is formed when one or more persons or their authorized representative signs and files with the secretary of state articles of organization that set forth all of the following * * *. R.C. 1705.04(A); (emphasis added).
 {¶ 43} There are only two differences in the version cited by the trial court and the version in effect on May 7, 1998: (1) one, rather than two or more persons, may form a limited liability company, and (2) use of the term "company" rather than "entity." As the version cited by the trial court is only slightly different from the version actually in effect on May 7, 1998, the trial court's error was harmless. Civ.R. 61.
 {¶ 44} Further, regardless of which version of R.C.1705.04(A) applied, the pertinent analysis centers on the statutory definitions of "member" (R.C. 1705.01[G]) and "membership interest" (R.C. 1705.01[H]). We have already determined that in the instant case, it is the operating agreement, and not the Articles of Organization, that confer "member" status to plaintiffs pursuant to R.C. 1705.01(G) and (H). Indeed, neither version of R.C. 1705.04(A) provides that the person or persons who "form" the limited liability company must be, or necessarily are, "members" of the company. In fact, both versions of the statute provide that the person who signs and files the Articles of Organization may be an "authorized representative" of the company.
 {¶ 45} Similarly, defendants' fourth, fifth, sixth, and eleventh assignments of error take issue with the trial court's rulings with regard to Parkwood Place's formation documents. In the fourth assignment of error, defendants maintain that the trial court erred in determining that defendants executed the formation documents only as "authorized representatives" when they were "clearly identified" as "members" in those documents.[1] In the fifth assignment of error, defendants contend that the trial court erred in analogizing the legal effect of filing Articles of Organization with the legal effect of filing Articles of Incorporation. In the sixth assignment of error, defendants argue that the trial court erred in failing to consider certain evidence submitted by defendants, i.e., certified copies of formation documents from other Ohio business entities for which Crow had filed documents with the Secretary of State. Defendants suggest that this evidence establishes that Crow intended to confer membership status to defendants by having them sign the formation documents. In the eleventh assignment of error, defendants contend the trial court erred by resolving a credibility dispute in favor of plaintiffs in the face of documentary evidence, i.e., the formation documents, which favors defendants.
 {¶ 46} As we have previously discussed, to determine the identity of the members of a limited liability company, one must read R.C. 1705.01(G) and (H) in pari materia. Taken together, these two statutes establish that to be a "member" of a limited liability company, a person's name must appear on the company records as one who shares in the company's profits and losses and has a right to receive distributions from that company. Parkwood Place's formation documents, to the extent they qualify as company records, do not include language satisfying the definition of "member" set forth in R.C. 1705.01(G) and (H).
 {¶ 47} Further, MacDonald's testimony, along with a review of the Articles of Organization and the Original Appointment of Agent forms and the applicable version of the statutes governing those documents, supports the trial court's finding that the forms utilized in forming the LLC were not current. As such, those documents do not create a genuine issue of material fact as to defendants' alleged membership in the LLC.
 {¶ 48} MacDonald testified that the formation documents utilized to form the LLC were not current. A review of both the Articles of Organization and Original Appointment of Agent forms reveal that they were prescribed by the Secretary of State in July 1994. In addition, both forms include instructions stating that the Original Appointment of Agent must be signed by at least a majority of the members of the LLC. In 1994, neither R.C.1705.04 (the statute governing the Articles of Organization), nor R.C. 1705.06 (the statute governing the Original Appointment of Agent), permitted an "authorized representative" to sign and file the documents. Defendants rely upon the fact that they signed the Original Appointment of Agent as "members" to create at least a genuine issue of material fact as to their alleged membership in the LLC. However, the versions of those statutes in effect at the time Parkwood Place was formed permitted an "authorized representative" to sign and file the formation documents. Thus, the trial court did not err in its rulings related to Parkwood Place's formation documents.
 {¶ 49} Defendants' seventh, eighth, and ninth assignments of error challenge the trial court's finding that defendants made no "contribution" to Parkwood Place. "Contribution" is defined as "any cash, property, services rendered, promissory note, or other pending obligation to contribute cash or property or to perform services that a member contributes to a limited liability company in the capacity as a member." R.C. 1705.01(B). Thus, pursuant to R.C. 1705.01(B), "contributions" are made by "members" of the limited liability company. As we have previously stated, defendants have set forth no evidence establishing that any of them meet the definition of "member" set forth in R.C.1705.01(G) and (H). Further, the evidence upon which defendants rely in asserting their claim of "contribution," i.e., the 1995 agreement between Crow and D'Amore, is not a part of the record, having been properly stricken by the trial court. For the foregoing reasons, defendants' third, fourth, fifth, sixth, seventh, eighth, ninth, and eleventh assignments of error are overruled.
 {¶ 50} By the tenth assignment of error, defendants argue that the trial court erred in finding that Matthews is the trustee of the Crow Trust absent evidence to support such a finding. Matthews' status as trustee is uncontroverted through his own sworn testimony provided at the preliminary injunction hearing. Defendants have offered no evidence, as required by Civ.R. 56(C), to raise an issue of fact as to Matthews' status as trustee. Defendants appear to suggest that this court (and the trial court) should "weigh" Matthews' testimony and find it to be incredible. However, such an exercise is not permitted in summary judgment proceedings. The tenth assignment of error is overruled.
 {¶ 51} Defendants assert in their twelfth assignment of error that the trial court erred in denying their Civ.R. 12(B)(6) motion to dismiss. When reviewing a judgment on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, an appellate court's standard of review is de novo. Perrysburg Twp. v. Rossford, 103 Ohio St.3d 79,2004-Ohio-4362, at ¶ 5. A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. State exrel. v. Hanson v. Guernsey Cty. Bd. of Comm. (1992),65 Ohio St. 3d 545, 548, citing Assn. for the Defense of the Washington Loc.School Dist. v. Kiger (1989), 42 Ohio St.3d 116, 117. A trial court must presume all factual allegations contained in the complaint to be true and must make all reasonable inferences in favor of the nonmoving party. Garofalo v. Chicago Title Ins.Co. (1995), 104 Ohio App.3d 95, 104, citing Perez v. Cleveland
(1993), 66 Ohio St.3d 397, Mitchell v. Lawson Milk Co. (1988),40 Ohio St.3d 190, and Phung v. Waste Mgt., Inc. (1986),23 Ohio St.3d 100. "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." York v. Ohio State Hwy. Patrol (1991),60 Ohio St.3d 143, 145.
 {¶ 52} In this case, plaintiffs sought a declaration that they are the only members of Parkwood Place and that defendants possess no rights or membership interests therein. Defendants argued in their motion to dismiss that there was no controversy entitling plaintiffs to declaratory relief because it is clear from plaintiffs' complaint that defendants are the only members of Parkwood Place and that plaintiffs are not members.
 {¶ 53} To be entitled to declaratory relief, a plaintiff must demonstrate that (1) a real controversy exists between the parties; (2) the controversy is justiciable in character; and (3) the situation requires speedy relief to preserve the rights of the parties. Landskroner v. Landskroner, 154 Ohio App.3d 471,2003-Ohio-4945, at ¶ 8, citing Herrick v. Kosydar (1975),44 Ohio St.2d 128. A court may dismiss a declaratory judgment action pursuant to Civ.R. 12(B)(6) only when: (1) no real controversy or justiciable issue exists between the parties, or (2) the declaratory judgment will not terminate the uncertainty or controversy. McConnell, supra, at 681, citing AEI Group, Inc.v. Ohio Dept. of Commerce (1990), 67 Ohio App.3d 546, 550, citing Fioresi v. State Farm Mut. Auto. Ins. Co. (1985),26 Ohio App.3d 203, 203-204.
 {¶ 54} In their verified complaint, plaintiffs allege that they own the membership units in Parkwood Place and that defendants never owned and/or acquired any membership interest in that entity. Accepting the allegations contained in the complaint as true, as we must in reviewing a decision to grant or deny a motion to dismiss under Civ.R. 12(B)(6), we find that a justiciable controversy exists between the parties and that declaratory judgment will terminate the controversy. The trial court, therefore, did not err in denying defendants' motion in this regard. The twelfth assignment of error is overruled.
 {¶ 55} In their thirteenth assignment of error, defendants contend the trial court erroneously denied their motion for a change of venue to Cuyahoga County. According to defendants, Cuyahoga County is the proper venue for the action under Civ.R. 3(B)(1), (2), (3), (5), and (6). Plaintiffs argue that venue properly lies in Franklin County pursuant to Civ.R. 3(B)(3), (6), and (7).
 {¶ 56} Venue is a procedural matter and connotes the locality where the lawsuit should be heard. Glover v. Glover (1990),66 Ohio App.3d 724, 727, citing Morrison v. Steiner (1972),32 Ohio St.2d 86, paragraph one of the syllabus. At the time plaintiffs commenced the instant action, Civ.R. 3(B) provided, in relevant part, as follows:
Any action may be venued, commenced and decided in any court in any county. * * * Proper venue lies in any one or more of the following counties:
(1) The county in which the defendant resides;
(2) The county in which the defendant has his or her principal place of business;
(3) A county in which the defendant conducted activity that gave rise to the claim for relief;
* * *
(5) A county in which the property, or any part of the property is situated if the subject of the action is real property or tangible personal property;
(6) The county in which all or part of the claim for relief arose * * *;
(7) In actions described in Civ.R. 4.3, in the county where plaintiff resides[.]
 {¶ 57} "The first nine provisions of Civ.R. 3(B) are on an equal status, and any court specified therein may be a proper and initial place of venue." Morrison, supra, at 89; see, also,Varketta v. General Motors Corp. (1973), 34 Ohio App.2d 1, 6
("The first nine provision of 3[B] are alternatives, and each may be a proper basis for venue, but they do not have to be followed in any order"). "Plaintiff has a choice where the action will be brought if any of the counties specified in Civ.R. 3(B)(1) through (9) are a proper forum under the facts of the case." Id. Thus, "`the plaintiff is not restricted to one specific county under Rules 3(B)(1) through (9) but may choose the county in which he prefers to commence the action.'" Berarducci v. StateTeachers Retirement Sys. (1984), 21 Ohio App.3d 195, 197, quoting General Motors Acceptance Corp. v. Jacks (1971), 27 Ohio Misc. 115, 119.
 {¶ 58} Further, Civ.R. 3(C)(1) states that a "court shall transfer the action to a county stated to be proper in division (B) of this rule" but only when the "action has been commenced in a county other than stated to be proper in division (B) of this rule." Accordingly, in order to change venue from Franklin County to Cuyahoga County, defendants must establish that Franklin County is an improper venue pursuant to Civ.R. 3(B), while demonstrating Cuyahoga County to be a proper venue under Civ.R. 3(B).
 {¶ 59} Venue is proper in Franklin County pursuant to both Civ.R. 3(B)(3) and (6), as defendants conducted activities in Franklin County that gave rise to plaintiffs' claim for relief and because all or part of the claim for relief arose in Franklin County. More particularly, plaintiffs' verified complaint seeks monetary damages, declaratory relief, and injunctive relief related to defendants' activities on August 23, 2004, in directing or causing their attorney to fraudulently execute and file a Statutory Agent Update for Parkwood Place with the Secretary of State's office, which is located in Franklin County. Therefore, Franklin County is a proper venue for this action. The trial court also found venue to properly lie in Franklin County pursuant to Civ.R. 3(B)(7). Having found venue to be proper in Franklin County pursuant to Civ.R. 3(B)(3) and (6), we need not consider the trial court's finding with regard to Civ.R. 3(B)(7). The thirteenth assignment of error is overruled.
 {¶ 60} Defendants' fourteenth assignment of error contends that the trial court erred in failing to rule on "the parties" objections to the magistrate's decision in contravention of Civ.R. 53(E)(4)(b). Preliminarily, we note that a review of the record reveals that only plaintiffs filed objections to the magistrate's decision. Contrary to their assertion, defendants did not file objections to the magistrate's decision; indeed, defendants moved the court for an order adopting the magistrate's decision without waiting for or ruling upon objections.[2]
 {¶ 61} Moreover, the trial court was not required to rule upon objections to the magistrate's decision prior to determining the parties' cross-motions for summary judgment. A magistrate obtains authority to hear and make recommendations only on those matters referred to it by the trial court. See Civ.R. 53(C). "A magistrate's authority is subject to the specifications and limitations stated in the order of reference." Flynn v. Flynn,
Franklin App. No. 03AP-612, 2004-Ohio-3881, at ¶ 11, citing Civ.R. 53(C)(2). Further, "[a] trial court retains its authority to decide an issue independent of the magistrate, as the grant of authority to a magistrate does not affect a trial court's jurisdiction." Id. at ¶ 12.
 {¶ 62} Here, the sole issue referred to the magistrate was plaintiffs' motion for preliminary injunction. The trial court thus retained jurisdiction to decide all issues pertaining to the parties' cross-motions for summary judgment. Accordingly, Civ.R. 53(E)(4)(b) does not apply. See, e.g., Ford Motor Credit v.Foster, Cuyahoga App. No. 85623, 2005-Ohio-6091 ("The record reflects that Judge Keith Belkins, an acting judge, not a magistrate, granted Ford's motion for summary judgment; therefore, Civ.R. 53 does not apply).
 {¶ 63} Defendants' reliance upon In re J.V., Franklin App. No. 04AP-621, 2005-Ohio-4925 and Ludwick v. Ludwick, Fayette App. No. CA2002-08-017, 2003-Ohio-2925, is misplaced. In those cases, the order underlying the appeal was a trial court judgment specifically related to the magistrate's decision. Here, defendants appeal from the trial court's summary judgment decision, not a decision related to the proceedings before the magistrate. The fourteenth assignment of error is overruled.
 {¶ 64} Also before this court is plaintiffs' motion to strike certain exhibits and statements offered in support of defendants' brief. Plaintiffs first challenge defendants' references to the transcript of the Summit County litigation. Contrary to defendants' assertions in its response to plaintiffs' motion to strike, the transcript was ordered stricken by the trial court. Defendants argue as much on page 9, footnote 8 of their merit brief. ("Interestingly, the Trial Court also ordered stricken the transcript from the trial of the Akron Litigation.") The court indicated that it reviewed that transcript and found it contained no evidence relevant to the instant action; the court further stated that it considered only the pleadings and the transcript of the preliminary injunction hearing in determining the parties' cross-motions for summary judgment. Thus, it is not part of the record in the trial court. Further, the transcript is not proper Civ.R. 56(C) evidentiary material. Accordingly, defendants' citations to the transcript are technically improper; however, given our finding that summary judgment is appropriate for plaintiffs as a matter of law, we cannot find that defendants' citations to the transcript are prejudicial.
 {¶ 65} Plaintiffs next take issue with defendants' references to "Plaintiffs Injunction Exhibit 14," the draft Parkwood Place operating agreement that was never executed. We have already determined that this evidence is not properly before this court, as it was not admitted at the preliminary injunction hearing and was never thereafter made part of the trial court record. Thus, defendants' references thereto are technically improper; however, given our disposition of the case, we cannot find defendants' reference to the exhibit to be prejudicial.
 {¶ 66} Plaintiffs next challenge defendants' citations to the magistrate's decision. Although defendants purport on page 5, footnote 6 of their brief that they "do not argue that the Trial Court was bound by the Magistrate's factual findings or legal conclusions," defendants reference the magistrate's findings later in that same footnote and again on page 10 of their brief. A magistrate's decision (including the findings contained therein), is not proper Civ.R. 56(C) evidentiary material. Accordingly, defendants' references thereto are technically improper, however, as noted previously, given our determination in this case, defendants' references do not prejudice plaintiffs.
 {¶ 67} Plaintiffs next complain about defendants' citations to case dockets from unrelated litigation and various Articles of Organization and Appointment of Agent forms filed by Crow pertaining to other Ohio entities. Defendants submitted certified copies of these documents in support of their renewed motion for summary judgment; however, the trial court apparently determined that they were not proper Civ.R. 56(C) evidentiary materials. Assuming arguendo that the materials comply with Civ.R. 56(C), defendants' citation to them was technically not improper. However, contrary to defendants' assertions, those materials do not create a genuine issue of material fact as to the central issue in this case, i.e., the identity of the members of Parkwood Place.
 {¶ 68} Finally, plaintiffs contend that several of the averments made by defendants in their brief are irrelevant and must be stricken pursuant to Civ.R. 12(F). While no appellate rule specifically governs motions to strike, Civ.R. 12(F) permits a court to strike "any redundant, immaterial, impertinent or scandalous matter." We agree that defendants' statements are irrelevant to the issue to be determined and are thus subject to a motion to strike; however, given our ultimate determination in this case, defendants' references do not prejudice plaintiffs.
 {¶ 69} For the foregoing reasons, defendants' 14 assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed. Plaintiffs' motion to strike is overruled.
Judgment affirmed.
McGrath and Travis, JJ., concur.
[1] Defendants also argue, citing plaintiffs' preliminary injunction hearing Exhibit 14, that defendants were intended to be members of Parkwood Place because they were identified as "members" in an unexecuted "potential operating agreement" prepared by MacDonald's attorney at the same time the formation documents were filed with the Secretary of State. However, the magistrate sustained defendants' objection to that exhibit, and it was not admitted. The exhibit was never thereafter made part of the trial court record. Thus, the exhibit is not a part of the record on appeal. A reviewing court cannot consider material that was not part of the trial court proceedings. Sanders v. Webb
(1993), 85 Ohio App.3d 674.
[2] We note that on April 5, 2006, defendants filed a response to the plaintiffs' objections to the magistrate's decision in which they asserted that one of the factual findings in the magistrate's decision was "incomplete." Defendants' averment does not constitute an "objection" to the magistrate's decision, as it does not comport with Civ.R. 53(E)(3)(a), (b), or (c).