[Cite as *Cullinan v. Ohio Dept. of Job & Family Servs.*, 2016-Ohio-1083.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

James Cullinan, :

      Plaintiff-Appellant, : No. 15AP-390
(C.P.C. No. 12CV-6568)

v. :

      (REGULAR CALENDAR)

Ohio Department of Job and :
Family Services,

:

      Defendant-Appellee.

:

---

D E C I S I O N

Rendered on March 17, 2016

---

**On brief:** *Tyack, Blackmore, Liston & Nigh Co., L.P.A.*, and *Jonathan T. Tyack*, for appellant.

**On brief:** *Michael DeWine*, Attorney General, *Jeffrey Jarosch*, and *Anne Light Hoke*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Plaintiff-appellant, James Cullinan, appeals the March 31, 2015 judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Ohio Department of Job and Family Services ("ODJFS"). For the reasons that follow, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} We have previously examined the matter before us in a related case arising from the Court of Claims of Ohio. *Cullinan v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-208, 2012-Ohio-4836. Although we briefly discussed the history of this

matter in *Cullinan*, we shall detail the relevant factual and procedural history as the record has been more fully developed in the instant case.

{¶ 3} Appellant and his ex-wife, Wendelyn K. Cullinan n.k.a. Teter ("Teter"), were divorced in 1999. Pursuant to the divorce agreement, appellant was ordered to pay child support in addition to a 2 percent processing charge resulting in a total monthly payment of $1,330.78. Appellant made the payments through the issuance of a personal check on a monthly basis that was sent to ODJFS[1] through the Franklin County Child Support Enforcement Agency ("agency").

{¶ 4} In 2001, appellant twice failed to timely remit his monthly child support payment. In October 2004, appellant again failed to timely remit his monthly child support payment. As a result, on November 2, 2004, the agency sent appellant a notice informing him that he was in default and that the agency was "required to immediately issue an income withholding order that includes payment on the arrears." (Motion for Summary Judgment, exhibit G.) Appellant admitted he saw this notice. Also on November 2, 2004, the agency sent an order to both appellant and his employer, ordering the employer to withhold a specified sum of money amounting to his monthly payment plus payment on the arrearage. Appellant stated that he did not recall seeing this withholding notice. On November 12, 2004, the agency sent a revised withholding order to both appellant and his employer, requiring the employer to withhold the monthly obligation without any additional withholding for arrears. Appellant stated that he did not recall seeing the November 12, 2004 notice.

{¶ 5} Following receipt of the agency's letters in November 2004, appellant's employer began withholding appellant's child support payment. Appellant's paystubs reflected the child support deduction from his biweekly paycheck. However, appellant stated that he never looked at his paycheck or pay stub and therefore never noticed the deductions from his pay. Despite the withholding notifications sent to appellant, the decrease in his biweekly pay, and the notation of the child support withholding amount on his biweekly pay stub, appellant continued to monthly issue personal checks for the full amount of his child support payment.

---

[1] "ODJFS administers the child support program for the state of Ohio." *Dunlop v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 11AP-929, 2012-Ohio-1378, ¶ 2.

{¶ 6}   In 2006, Charmaine Drake, a support officer at the agency, observed that appellant had a credit on his child support account and that he was overpaying every month.  In March 2007, Drake attempted to call appellant to discuss his overpayment, but she received no response and there was no way to leave a message.  In December 2007, Drake sent appellant a letter in which she stated that appellant's child support obligation was "being overpaid monthly and we would like to speak with you concerning the balance on the account that has been overpaid.  If you can please call into the agency at your earliest convenience it would be greatly appreciated.  We do not currently have a valid phone number so this is the only way for us to communicate with you."   (Motion for Summary Judgment, exhibit P.)  However, the letter was returned to the agency because appellant no longer lived at the address listed in the agency's records, and he had not updated his address with the agency.  Drake sent an address verification request to the post office, but was unable to locate appellant's home address.

{¶ 7}   By December 16, 2009, Drake was able to locate appellant's address.  On March 12, 2010, during the course of an investigation related to the termination of appellant's child support obligation due to the emancipation of his child, Drake placed an impound order on appellant's child support payments because appellant's account was overpaid.  Following this date, ODJFS impounded any money received from appellant, later returning such funds upon completion of the termination investigation.

{¶ 8}   On September 30, 2011, appellant filed a complaint in the Court of Claims, asserting claims for conversion, equitable restitution, and constructive trust/breach of fiduciary duty based on the alleged over-collection of child support payments by ODJFS. On February 17, 2012, the Court of Claims dismissed appellant's complaint pursuant to Civ.R. 12(B)(1), finding that it lacked jurisdiction because appellant's complaint, in which he sought the return of funds wrongfully collected or held by ODJFS, essentially asserted a claim for equitable restitution.  On appeal, we affirmed the judgment of the Court of Claims, stating that dismissal was proper because "[a]ppellant's complaint does not assert a claim for money damages sounding in law" but, rather, asserted a claim for equitable restitution. *Cullinan* at ¶ 15.

{¶ 9}   On May 21, 2012, while his appeal from the Court of Claims was pending before this court, appellant filed a complaint in the Franklin County Court of Common

Pleas, asserting claims for: (1) conversion, (2) equitable restitution, and (3) constructive trust or breach of fiduciary duty. On May 24, 2013, ODJFS filed a motion to dismiss. On July 19, 2013, the trial court denied ODJFS's motion to dismiss.

{¶ 10} On August 2, 2013, ODJFS filed an answer to the complaint. On August 15, 2013, ODJFS filed a third-party complaint against appellant's ex-wife, Teter. On January 20, 2014, Teter filed a motion to dismiss the third-party complaint, asserting that ODJFS could not maintain a claim against her for contribution because appellant agreed to release his claims related to the overpayment of child support against her in exchange for an agreed-upon sum of money. On March 3, 2014, ODJFS filed an amended answer, asserting that appellant's complaint was barred by release because of appellant's agreement with Teter. On April 25, 2014, the trial court denied Teter's motion to dismiss the third-party complaint.

{¶ 11} On November 7, 2014, all parties filed separate motions seeking summary judgment. After being fully briefed by the parties, on March 31, 2015, the trial court filed a decision and judgment entry granting summary judgment in favor of ODJFS, denying appellant's motion for summary judgment, and rendering moot Teter's motion for summary judgment.

## II. Assignment of Error

{¶ 12} Appellant appeals assigning the following single error for our review:

> THE TRIAL COURT ERRED IN GRANTING THE MOTION
> OF ODJFS FOR SUMMARY JUDGMENT.

## III. Discussion

{¶ 13} In his assignment of error, appellant asserts the trial court erred by granting summary judgment in favor of ODJFS because he properly asserted a claim for conversion. ODJFS responds that the trial court properly granted summary judgment because: (1) appellant failed to establish that ODJFS acted wrongfully, (2) the trial court does not have jurisdiction to grant compensatory damages, and (3) appellant cannot obtain equitable restitution because ODJFS does not possess the specific funds he seeks.

{¶ 14} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is

appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 15} "Cases in which a plaintiff claims a state agency has wrongfully collected certain funds are characterized generally as claims for equitable restitution."  *Interim HealthCare of Columbus, Inc. v. State Dept. of Adm. Servs.*, 10th Dist. No. 07AP-747, 2008-Ohio-2286, ¶ 17, citing *Morning View Care Ctr.-Fulton v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 04AP-57, 2004-Ohio-6073, ¶ 19.  *See also Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, paragraph one of the syllabus ("A suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity.").  We first examine whether ODJFS acted wrongfully in either collecting or holding appellant's funds.

{¶ 16} In his complaint, appellant asserted that ODJFS "has in the past, and continues to wrongfully exercise dominion over Plaintiff's personal property, namely that portion of Plaintiff's funds over collected above the court ordered child support, to the exclusion of the rights of Plaintiff."  (Complaint, ¶ 21.)  Furthermore, appellant claimed that ODJFS "had absolutely no legal authority to collect double child support payments from 2004 through the first half of 2010, nor did Defendant have the authority to charge an extra 2% on that amount as a processing charge."[2]  (Complaint, ¶ 21.)  For the following reasons, we find appellant's argument unpersuasive.

{¶ 17} First, it is important to note that appellant does not argue that ODJFS acted improperly by issuing a wage withholding order following appellant's failure to timely remit his child support payment in October 2004.  *See* Ohio Adm.Code 5101:12-55-03.1.  Instead, appellant contends that "[n]otwithstanding the awareness by ODJFS that the double payments were being collected, ODJFS took no action to halt the double

---

[2] We note that appellant no longer claims that ODJFS collected a second processing fee. The uncontested evidence in the record reflects that ODJFS collected only a single monthly fee in the amount originally contemplated by the child support order.

payments, impound the double payments or otherwise return the double payments to [appellant]." (Memorandum Contra, 2.) Although appellant argues that ODJFS acted wrongfully by committing such acts, he fails to provide reference to a statutory provision that supports this argument and further fails to refute ODJFS's assertion that it was legally required, pursuant to R.C. 3121.50, to disburse within two days the money it collected from appellant.

{¶ 18} R.C. 3121.50 provides that "[o]n receipt of any amount forwarded from a payor or financial institution, the office of child support shall distribute the amount to the obligee within two business days of its receipt of the amount forwarded." Pursuant to R.C. 3121.50, ODJFS argues that "when [ODJFS] received payments from [appellant] that exceeded his monthly obligation, it was required by law to disburse those payments to [Teter] for the support of their child." (Appellee's Brief, 19.) Appellant does not respond to ODJFS's contentions regarding the requirements imposed by R.C. 3121.50.

{¶ 19} However, in his reply brief, appellant argues that, pursuant to Ohio Adm.Code 5101:12-60-50.1(D), ODJFS was obligated to impound child support payments whenever it was aware of an overpayment. We reject this argument for two reasons. First, appellant raises this argument for the first time in his reply brief. Under App.R. 16(C), an appellant may file a brief "in reply to the brief of the appellee." The purpose of a reply brief is to afford the appellant an opportunity to respond to the brief of the appellee, not to raise a new argument for the first time. *State v. Mitchell*, 10th Dist. No. 10AP-756, 2011-Ohio-3818, ¶ 47 ("A reply brief affords an appellant an opportunity to respond to an appellee's brief, * * * and it is improper to use it to raise a new issue."); *State ex. rel. Bryant v. Meyer Co.,* 10th Dist. No. 07AP-731, 2008-Ohio-3292, ¶ 5; *State v. Newcomb*, 10th Dist. No. 04AP-1223, 2005-Ohio-4570, ¶ 29. Therefore, we generally will not address an argument raised for the first time in a reply brief. *State v. Shedwick*, 10th Dist. No. 11AP-709, 2012-Ohio-2270, ¶ 50.

{¶ 20} Second, we reject appellant's argument because it is incorrect on its merits. Specifically, appellant fails to consider subsection (D) in relation to the whole of Ohio Adm.Code 5101:12-60-50.1. Ohio Adm.Code 5101:12-60-50.1(D)(1) provides that "[w]hen the [agency] is aware that support is or may be overpaid, the [agency] shall impound support paid pursuant to the child support order." However, as appellant himself admits,

"[a] review of the remaining subsections of OAC § 5101:12-60-50.1 reveal[s] they are contingent upon the commencement of a 'termination investigation.' " (Appellant's Reply Brief, 5.) *See* Ohio Adm.Code 5101:12-60-50.1(A)(1) "shall complete an administrative termination investigation"; (B)(1) "[w]hen * * * administrative termination investigation results indicate"; (C)(1) "[w]hen * * * administrative termination investigation results indicate").

{¶ 21} The paramount consideration in determining the meaning of an administrative regulation, like a statute, is the intent of the drafters. *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, ¶ 34; *Sierra Club v. Koncelik*, 10th Dist. No. 12AP-288, 2013-Ohio-2739, ¶ 21, citing *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, ¶ 20 (applying rule in determining intent of Ohio Administrative Code regulations). When a court attempts to discern the legislative intent of a statute, it " 'must first look to the language of the statute itself to determine the legislative intent. If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly.' " *Matthews v. D'Amore*, 10th Dist. No. 05AP-1318, 2006-Ohio-5745, ¶ 32, quoting *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105-06 (1973). "If the meaning of the statute is subject to different interpretations, the appellate court must invoke the rules of statutory construction to determine legislative intent." *Sierra Club* at ¶ 21, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553 (2000). Here, because the administrative rule at issue is subject to different interpretations, we consider the rules of statutory construction.

{¶ 22} A court "must * * * bear in mind that '[s]tatutes concerning the same subject matter must be construed in pari materia.' " *Matthews* at ¶ 32, quoting *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, ¶ 7. Furthermore, "words and phrases in a statute must be read in context of the whole statute." *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 102 (1989). *See O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, ¶ 59 (stating that "words cannot be read in a vacuum, but rather must be read in the context of the statute as a whole"). Here, reading Ohio Adm.Code 5101:12-60-50.1(D) in conjunction with the remaining subsections of 5101:12-60-50.1, we conclude that 5101:12-60-50.1(D) applies in the context of a termination investigation.

{¶ 23} Our conclusion is supported by the fact that appellant fails to reconcile his interpretation of Ohio Adm.Code 5101:12-60-50.1 with controlling provisions of the Ohio Revised Code. Specifically, R.C. 3121.50, as previously mentioned, requires that "[o]n receipt of *any amount* forwarded from a payor," ODJFS must distribute such payments within "two business days of its receipt." (Emphasis added.) Appellant fails to cite to any provision of the Ohio Revised Code that permits or requires ODJFS to impound payments whenever an obligor overpays his or her support obligation.

{¶ 24} This interpretation is further supported by considering other related statutory sections in conjunction with R.C. 3121.50. Specifically, R.C. 3119.89 and 3119.90 consider impounding child support in the context of a termination investigation. R.C. 3119.89 provides that a child support enforcement agency conducting an investigation related to the termination of a child support order is required to determine "[w]hether child support amounts paid pursuant to the order being investigated should be impounded because continuation of receipt and disbursement would lead to an overpayment by the obligor." R.C. 3119.89(A)(5). Additionally, R.C. 3119.90(A) provides that in the context of a termination investigation, a child support enforcement agency must submit or issue an order impounding funds when it "determines *both* that a child support order *should terminate and that child support amounts* paid pursuant to the order *should be impounded* because continuation of receipt and disbursement would lead to an overpayment by the obligor." (Emphasis added.) Thus, when considering R.C. 3119.89(A)(5) and 3119.90 in conjunction with the requirements of R.C. 3121.50, it is clear that Ohio Adm.Code 5101:12-60-50.1 applies in the context of a termination investigation. Therefore, considering the foregoing, we find appellant's argument regarding Ohio Adm.Code 5101:12-60-50.1 to be without merit.

{¶ 25} Furthermore, in support of our conclusion that ODJFS did not act wrongfully, Drake testified in her deposition that overpayments of child support were "not uncommon" and can occur through no fault of the agency. (Drake Depo. 35.) Drake stated: "[I]t happens quite often where our obligors make additional payments and it's for various reasons; they have an outside agreement, they do it because they want their kids to maintain the same lifestyle." (Drake Depo. 34-35.) Furthermore, Drake testified that

there was no existing policy or requirement that mandated contacting appellant regarding his overpayments:

> It would have been more of a requirement if both payments were coming in from a wage withholding because that means it will be our error and we need to at least terminate one of the wage withholds. But our primary method of collection is trying to get a wage withhold established. Anything above and beyond that that is made by the obligor is considered a gift through Child Support, so you're not really obligated to investigate that.

(Drake Depo. 36.)  Drake testified that she was only able to impound funds from a payor under certain circumstances, specifically "[t]he child had to be pending termination in order to impound a case or there has to be some type of a court order to impound." (Drake Depo. 39.)

{¶ 26} Our conclusion that appellant fails to demonstrate how ODJFS acted wrongfully is further supported by other cases which have examined claims for equitable restitution.  Specifically, in *Santos*, the appellant, who was injured in the course of his employment, received benefits and compensation from the Ohio Bureau of Workers' Compensation ("BWC") and later settled an intentional-tort claim against his employer for an additional sum of money.  Following the appellant's settlement with his employer, the BWC, pursuant to a statute that was later found to be unconstitutional, asserted subrogation rights against the appellant for the amount it paid to him in benefits and compensation.  Because the appellant sought the return of funds that were wrongfully collected under an unconstitutional law, the Supreme Court of Ohio concluded that the appellant asserted a claim for equitable restitution.  *Id.* at ¶ 17  ("This court held * * * that the workers' compensation subrogation statute was unconstitutional.  Accordingly, any collection or retention of moneys collected under the statute by the BWC was wrongful.").  *See also Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.*, 62 Ohio St.3d 97, 105 (1991), paragraph three of the syllabus (concluding that "the reimbursement of monies withheld pursuant to an invalid administrative rule is equitable relief, not money damages").

{¶ 27}  Here, unlike in *Santos* and *Ohio Hosp. Assn.*, appellant fails to demonstrate that ODJFS acted in violation of a duty, statutory or otherwise.  Therefore, we find that, as a matter of law, appellant cannot establish a claim for equitable restitution.

{¶ 28} It is also important to note that ODJFS attempted to contact appellant regarding the overpayments but was unable to do so as a result of appellant's failure to provide updated contact information to the agency. In response to ODJFS's motion for summary judgment, appellant asserted that "the negligence of [appellant] is inmaterial [sic] and irrelevant to the claims at bar." (Memorandum Contra, 2, fn. 1.) However, appellant was required by the joint shared parenting plan to notify the agency in writing of any change in residential address or telephone number. Specifically, the plan provided that "[e]ach party must notify the agency of all changes until further notice from the court" and stated that "if you are the obligor and you fail to make the required notifications you may not receive notice of the following enforcement actions against you: * * * withholding from your income." (Emphasis omitted.) R.C. 3121.24(A) also provides that the parties to a support order must "notify the agency administering the support order of any change in information immediately after the change occurs." Appellant admitted that he moved from the address he originally provided to the agency and that he changed his telephone number but failed to update his contact information with the agency.

{¶ 29} As a result of his failure to timely provide updated contact information, appellant's arguments regarding the failure of ODJFS to contact him regarding the additional payments he made are not well-taken. *Patricia E. v. Wayne S.*, 6th Dist. No. L-05-1135, 2006-Ohio-28, ¶ 7 (finding that the appellant waived any claim of error regarding proper service of motions because he failed to notify the child support enforcement agency of changes to his contact information as required by R.C. 3121.24).

{¶ 30} Therefore, because appellant fails to demonstrate that ODJFS acted wrongfully in its collection of child support payments, he cannot establish a claim for equitable restitution as a matter of law. As a result, we find that the trial court did not err in granting summary judgment in favor of ODJFS. Accordingly, we overrule appellant's sole assignment of error.

## IV. Motion to Strike

{¶ 31} On June 11, 2015, ODJFS filed a motion seeking leave to file a surreply brief or, in the alternative, to strike a portion of appellant's reply brief that ODJFS contends improperly raised arguments for the first time that were not contained in appellant's

merit brief.  On June 11, 2015, we denied ODJFS's motion to file a surreply brief, but deferred ruling on ODJFS's alternative motion to strike the identified portion of appellant's reply brief.  Although we find that appellant improperly raised arguments not contained in his initial brief, in light of the foregoing analysis, it is unnecessary to strike the offending portion of appellant's reply brief.  Accordingly, ODJFS's motion to strike is denied.

## V. Disposition

{¶ 32} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Motion to strike denied;*
*judgment affirmed.*

SADLER and BRUNNER, JJ., concur.

_____