TERRY, APPELLANT, *v.* MARKOFF; AMERICAN LEGION POST NO. 746, APPELLEE.

(No. CA 9601—Decided April 9, 1986.)

*Michael L. Tucker,* for appellant.

*Gordon D. Arnold,* for appellee American Legion Post No. 746.

*Richard M. Hunt,* for George Markoff.

WOLFF, J. On December 7, 1984, Richard H. Terry filed a complaint in the Montgomery County Court of Common Pleas against George Markoff and American Legion Post No. 746 (the "Post"). The complaint alleged that Markoff had assaulted Terry on December 10, 1983, at the Post on North Dixie Drive in Dayton. Terry alleged in his claim against the Post that it has a duty not to allow any member, guest, or customer to become so intoxicated that he poses a threat to other members, guests, or customers; that the Post breached this duty by allowing Markoff to become so intoxicated that he had little control over his actions, and posed a threat to Terry and other members and guests of the Post; and that the Post's breach of its duty was a proximate cause of Markoff's assault on Terry.

By pretrial order of April 16, 1985, the trial court established a discovery cut-off of September 30, 1985, a deadline for motions for summary judgment of September 9, 1985, and a trial date of October 28, 1985.

The Post filed its motion for summary judgment on September 9, 1985. The trial court granted summary judgment on the authority of *Settlemyer* v. *Wilmington Veterans Post No. 49* (1984), 11 Ohio St. 3d 123. The court concluded that the Post "is precisely the same type of non-profit social organization as was the defendant in *Settlemyer,*" found this case indistinguishable from *Settlemyer,* and accordingly determined that the Post was entitled to judgment as a matter of law.

On September 16, 1985, contemporaneously with his response to the Post's motion for summary judgment,

Terry filed a motion for leave to file an amended complaint which would have alleged that the Post engaged in the sale of intoxicating beverages to members and guests, engaged in the sale of intoxicating beverages to Markoff on December 10, 1983 with actual knowledge that Markoff was intoxicated, in violation of R.C. 4301.22(B), and that this violation was a proximate cause of Terry' injuries.

The trial court overruled the motion for leave to amend as "untimely" and "not well taken."

It is from these two adverse rulings that Terry asserts the following assignments of error:

"The lower court erred in sustaining the American Legion's motion for summary judgment as plaintiff's complaint in conjunction with the evidentiary material filed with the court created a genuine issue of fact concerning whether the American Legion sold intoxicating beverages to defendant Markoff in violation of O.R.C. Section 4301.22(B).

"The lower court abused its discretion in overruling plaintiff's motion for leave to file a first amended complaint as the proposed first amended complaint sets forth a claim upon which relief may be granted[;] it was, in relation to the timing of the American Legion's motion for summary judgment, seasonably filed[;] and it was tendered in good faith."

In connection with the motion for summary judgment there was evidence, albeit somewhat in dispute, as follows: the Post had a liquor license. The Post also had a pay-as-you-go bar. Markoff consumed several alcoholic drinks at the Post. The alleged assault occurred about midnight. Terry stated in deposition that he first observed Markoff at the Post around noontime drinking. Terry also testified that in his opinion Markoff was highly intoxicated and that he stag-

gered and was loud. Terry further testified that Markoff later admitted to him that at the time of the assault he was intoxicated.

The question before us is whether the evidence, construed most strongly in Terry's favor, Civ. R. 56(C), established an actionable claim against the Post, or whether *Settlemyer,* as the trial court concluded, was dispositive of the issue.

We have carefully considered the *per curiam* opinion rendered by the Ohio Supreme Court in *Settlemyer. Settlemyer* affirmed the trial court's granting of a motion to dismiss pursuant to Civ. R. 12(B)(6).

In *Settlemyer* the court went to great lengths to distinguish between *sales* of intoxicating beverages by commercial providers and *provision* of intoxicating beverages by (non-commercial) social hosts.

The court further emphasized that there were no allegations of sale in the complaint nor were sales of intoxicating beverages revealed by the record.

We think it is important to note that all of the cases relied upon by the Ohio Supreme Court in declining to extend liability to the social provider of alcoholic beverages involved non-licensed providers who received no remuneration. *Settlemyer, supra,* at 127.

Although the evidence indicates that the Post is a non-profit organization, we believe that the evidence presented to the trial court in this case supports a claim upon which relief can be granted.

Unlike *Settlemyer,* which appears to have been confined to the allegations contained in the complaint, there was evidence before the court in this case. That evidence established that the Post had an Ohio liquor license, that the Post had a pay-as-you-go bar, that Markoff consumed several alcoholic drinks at the Post, and that Markoff was observably intoxicated prior to the assault. An inference can be drawn from this evidence that the Post sold intoxicating liquor to Markoff with the knowledge that he was intoxicated. *Settlemyer, supra,* at 126.

The court noted in *Settlemyer,* at 125-126, that:

"* * * In *Mason* [v. *Roberts* (1973), 33 Ohio St. 2d 29 (62 O.O.2d 346)] * * * we set forth two situations in which the commercial provider of alcoholic beverages could be subjected to liability to another patron. * * * The other situation set forth is *where the sale is contrary to statute.* * * *"* (Emphasis added.)

We believe that the evidence before the trial court established a violation of R.C. 4301.22(B):

"Sales of beer and intoxicating liquor under all classes of permits and from state liquor stores are subject to the following restrictions, in addition to those imposed by the rules or orders of the department of liquor control:

"* * *

"(B) No sales shall be made to an intoxicated person."

We realize that the Post in this case is no doubt similar to the Wilmington Veterans Post No. 49 which was the premises in *Settlemyer.* However, we must emphasize the procedural status of the *Settlemyer* case and the fact the complaint was devoid of any allegation of a sale.

We are mindful of the Ohio Supreme Court's characterization of Wilmington Veterans Post No. 49 as a social provider, but such a characterization is consistent with the complaint *in that case,* which complaint made no allegation of a "sale."

In view of the Supreme Court's reliance in *Settlemyer* on cases that all involved non-licensed providers who received no remuneration for the alcoholic beverages, we are persuaded that if confronted with the record before us, which contains evidence of a liquor license held by the Post and actual sales of liquor by the Post, that the Supreme

Court would recognize an actionable claim.

In *Settlemyer,* the Ohio Supreme Court stated as follows:

"The next question becomes whether *Mason* should be extended in order to grant appellant a cause of action. We do not believe such an extension is warranted herein. We find merit in appellee's assertion that a social provider of intoxicating beverages should not be held to the same duty of care that a commercial proprietor is subject to under *Mason.* As the appellee points out, the commercial proprietor has a proprietary interest and profit motive, and should be expected to exercise greater supervision than in the (non-commercial) social setting. Moreover, a person in the business of selling and serving alcohol is usually better organized to control patrons, and has the financial wherewithal to do so. It also is reasonable to conclude that by virtue of its experience, the commercial proprietor is more familiar with its customers and their habits and capacities." *Id.* at 127.

We believe that our conclusion that the evidence supports an actionable claim can be reconciled with this language. Although the Post is a non-profit organization, it certainly has some characteristics of a commerical proprietor. It has an Ohio liquor license and it sells alcoholic beverages. Furthermore, R.C. 4301.22(B) makes no exception for non-profit licensees. While the complaint in *Settlemyer* alleges, at most, a social provider in the traditional sense — no liquor license and no remuneration — the evidence here establishes the Post to be more than merely an unlicensed, gratuitous social host.

Accordingly, we disagree with the Post's contention that *Settlemyer* established that it was a social provider immune from liability as a matter of law.

Furthermore, we flatly reject the Post's argument that *Settlemyer* stated that any sale by the Post is not a sale within the meaning of R.C. 4301.22. Footnote 1 to *Settlemyer* does not have the effect ascribed to it by the Post. Footnote 1 simply provides that, as it relates to R.C. 4301.22, the terms "sale" and "sell" are to be confined to their ordinary meanings and not to be given the expansive definition provided in R.C. 4301.01(A)(2). Because we conclude that the evidence before the court below established an actionable claim, we find that the court erred in granting summary judgment to the Post and that the assignment of error has merit.

Turning to the second assignment of error, Civ. R. 15(A) provides that leave to amend shall be freely given when justice so requires. This notion was expanded upon in *Peterson* v. *Teodosio* (1973), 34 Ohio St. 2d 161, at 175 [63 O.O.2d 262]:

"The spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies. Civ. R. 1(B) requires that the Civil Rules shall be applied 'to effect just results.' Pleadings are simply an end to that objective. The mandate of Civ. R. 15(A) as to amendments requiring leave of court, is that leave 'shall be freely given when justice so requires.' Although the grant or denial of leave to amend a pleading is discretionary, where it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion. * * *"

In urging affirmance, the Post argues that on the record before the court even the proposed amended complaint does not state an actionable claim. For the reasons provided in our discussion of the first assignment of error, we must reject this argument.

The Post also claimed before the

24

trial court that it would be unfair to permit Terry to assert a new cause of action after the discovery cut-off when discovery had proceeded along the lines suggested by the original complaint against the Post. On appeal, the Post has not argued this ground as a justification for the trial court's denial of leave to amend, and from our review of the record we fail to perceive how the court's permitting the amended complaint would have prejudiced the Post.

We conclude that the trial court's determination that the motion was untimely and not well-taken was erroneous.

Accordingly, we find the assignment of error to have merit.

The summary judgment against Richard H. Terry and in favor of American Legion Post No. 746 is reversed and this cause is remanded.

*Judgment reversed and cause remanded.*

BROGAN, P.J., concurs.

KERNS, J., dissents.