[Cite as *Accelerated Moving & Storage v. Herc Rentals, Inc.*, 2022-Ohio-3016.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Accelerated Moving and Storage, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 21AP-523 |
| v. | : | (C.P.C. No. 20CV-6122) |
| Herc Rentals, Inc., et al. | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on August 30, 2022

**On brief:** *Percy Squire Co., LLC,* and *Percy Squire*, for appellant. **Argued:** *Percy Squire.*

**On brief:** *Vorys, Sater, Seymour, and Pease, LLP, Rodney A. Holaday,* and *Danielle S. Rice,* for appellees. **Argued:** *Danielle S. Rice.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, Accelerated Moving and Storage ("Accelerated"), appeals the decision of the Franklin County Court of Common Pleas granting the motion filed by defendants-appellees, Herc Rentals, Inc. ("Herc Rentals"), Lawrence Silber (President and CEO of Herc Rentals, Inc.), and John Ehret (Attorney and Risk Manager for Herc Rentals, Inc.), and dismissing Accelerated's complaint based on Civ.R. 12(B)(6). The complaint purported to assert claims for commercial disparagement and trade libel against appellees, and those claims arose exclusively from a work order invoice in the amount of $13,623.96 issued by Herc Rentals to Accelerated.

{¶ 2} Herc Rentals is a national company incorporated in Delaware that rents out equipment that is used for construction, excavating, and other heavy labor. Accelerated is an Ohio corporation. The invoice in question arose from damage to a rented piece of

equipment, a "compact track loader," which had been rented at and returned to a Herc Rentals office in Bonita Springs, Florida. Accelerated had an account with Herc Rentals, and had previously rented equipment at the Bonita Springs office. The track loader was apparently rented using Accelerated's account but Accelerated professed no knowledge of the rental and no responsibility for the damage to it. After receiving email correspondence from Herc Rentals about the damage to the track loader, Accelerated investigated the situation and allegedly discovered that the rental had actually been made by a third party, Daniel Patricio, who had previously done contract work for Accelerated's CEO on a property in Florida and was on a previous occasion authorized to rent equipment for Accelerated. (*See* Todd G. Wilson, Aff. attached as Ex. C to Pl's Resp. & Memo. in Opp.) ("I learned the credit card [used to pay for the rental] belonged to Daniel Patricio, a person who had done work for me personally in the past and in a very specific [sic] single instance was authorized to rent equipment for Accelerated."). Accelerated's CEO indicated that Patricio was not an employee of Accelerated and had not been authorized to make the rental at issue, but Herc Rentals maintained that Accelerated was at least in part responsible for the damage to the track loader. According to an email Accelerated's CEO sent to Herc Rentals:

> Daniel Patricio is a contractor who has done work for us in Florida. Daniel "is not" an employee for Accelerated, nor does he perform work on behalf of Accelerated, which is an Ohio based corporation. In October of 2019 he did landscaping work for us, as a vendor, to cut trees at a location in Apopka. Living in Ohio, I was the POC for the rental and payment of that equipment. At all times I was in dialogue with your salesperson regarding the rental of equipment through the payment, which I made in person.
>
> Acting on his own, on January 5, 2020, Daniel went back to Herc and was able to rent, under our name and customer number, a Track Loader which was involved in an accident. At no time did I, or anyone at Accelerated, know about, or authorize this rental.
>
> * * *
>
> Accelerated is not responsible for the rental or the damage that occurred. I want you to immediately remove these charges from my account and provide a letter absolving us from this claim.

> If you persist on continuing this course of action, I will retain legal counsel, sue you for making an unauthorized rental to our account, knowingly making a false damage claim to our account, for punitive damages, and legal fees.
>
> I am giving you 72 hours to respond before taking legal action. We are not going to be your scapegoat.

(Aug. 30, 2020 Email from Pl., attached as Ex. 6 to Resp. & Memo. in Opp.) Accelerated's attorney was copied on this email, and subsequent discussions between the attorney and Herc Rentals' in-house counsel (appellee Ehret) were perfunctory and unsuccessful. The case was referred by Herc Rentals to outside collections counsel two weeks later, and Accelerated's complaint was filed that same day.

{¶ 3} Appellees filed a joint motion to dismiss on November 19, 2020, arguing that neither appellee Silber nor appellee Ehret were subject to the personal jurisdiction of the court and therefore the claims against them should fail pursuant to Civ.R. 12(B)(2), and also that Accelerated had failed to state valid claims against any of the appellees and therefore the case should be dismissed pursuant to Civ.R. 12(B)(6). On October 13, 2021, the trial court granted the motion to dismiss based on Civ.R. 12(B)(6), holding that the complaint did not allege sufficient facts to establish that the defendants had made any false representations in the invoice, and that Accelerated's claims for commercial disparagement and trade libel could not prevail, and also that as to the trade libel claim that Accelerated did not allege "that the invoice was made and sent with the necessary degree of fault and that it reflected injuriously on Plaintiff's business." (Oct. 13, 2021 Decision & Entry on Defs'. Mot. to Dismiss at 5.)

{¶ 4} This appeal followed and Accelerated now asserts assignments of error with the trial court's judgment.

> 1. The trial court erred when it granted Defendants' motion to dismiss for failure to state a claim upon which relief may be granted.
>
> 2. The trial court should have granted Appellant leave to file an amended complaint.

{¶ 5} Accelerated's first assignment of error asserts that the trial court erred in holding that it failed to state claims for commercial disparagement or trade libel. Pursuant to Civ.R. 12(B)(6), "[w]hen reviewing a judgment on a Civ.R. 12(B)(6) motion to dismiss for

failure to state a claim upon which relief can be granted, an appellate court's standard of review is de novo." *Matthews v. D'Amore*, 10th Dist. No. 05AP-1318, 2006-Ohio-5745, ¶ 51. In its review, "[t]he court must presume all factual allegations contained in the complaint to be true and must make all reasonable inferences in favor of the plaintiff," but it "need not [] accept as true any unsupported and conclusory legal propositions advanced in the complaint." *Bullard v. McDonald's*, 10th Dist. No. 20AP-374, 2021-Ohio-1505, ¶ 11.

{¶ 6} Initially, we must clear up some confusion about the claims that Accelerated purports to assert. Accelerated's complaint denominates its first cause of action as "commercial disparagement" and its second cause of action as "trade libel," but on review it is apparent that both claims are misnamed.

{¶ 7} In Ohio, commercial disparagement is a statutory deceptive trade practice claim under R.C. 4165.02(A)(10) and accrues when a person "disparages *the goods, services, or business* of another by false representation of fact." (Emphasis added.) But Ohio courts have determined that the statute applies only "when [the] quality of a business's goods or services has been demeaned a [statutory] commercial disparagement claim may be asserted," and that "if allegations relate to integrity, defamation is [the] proper claim." *Toledo Heart Surgeons, Inc. v. Toledo Hosp.*, 154 Ohio App.3d 694, 697, 2003-Ohio-5172, ¶ 12 (6th Dist.), citing *Blue Cross & Blue Shield of Ohio v. Schmidt*, 6th Dist. No. L-24-291, 1996 WL 71006 at * 3 (Feb. 16, 1996).

{¶ 8} Accelerated's complaint asserts that "[d]efendants * * * published a false statement against Accelerated, a claim that Accelerated is liable for damage to HERC property." (Sept. 16, 2020 Compl. at ¶ 9.) But the invoice, attached to Accelerated's complaint, contains no such statement. Rather, it simply identifies itself as a "Bill" and "Work Order Invoice" addressed to Accelerated. The invoice states that the track loader "WAS INVOLVED IN [AN] ACCIDENT WHILE IT WAS BEING TRANSPORTED ON TRAILER. THE UNIT CAME OFF THE TRAILER WHILE TRAVELING DOWN [THE] HIGHWAY. CAB IS BENT BEYOND REPAIR. RPLC CAB," but does not specifically assert that Accelerated is responsible for that accident or liable for that damage. (Invoice at 2, attached to Compl.) And in its reply brief to this court, Accelerated has clarified its claim and asserts that, simply by issuing the invoice, defendants made the "false statements that Accelerated - - *a moving company* — rented and then damaged an expensive piece of

equipment and thereafter then refused to pay for this damage," and thereby "impugns Accelerated's moving services, business practices and veracity." (Emphasis sic.) (Feb. 22, 2022 Appellant's Reply Brief at 2.)

{¶ 9} But these specific allegations are not contained in the complaint or supported by the invoice—nowhere does the invoice indicate or imply anything about Accelerated's moving services or business practices. In fact, the invoice does not even suggest that Accelerated has "refused" to pay for the damage; rather, it indicates simply that the damages have not yet been paid. Ironically, by admitting that its actual complaint is that the invoice "impugn [s Accelerated's] veracity," Accelerated demonstrates its claim cannot be stated as "commercial disparagement"—"veracity" clearly does not relate to the "quality of [Accelerated's] goods or services," and as noted above, claims about "integrity" are not covered by R.C. 4165.02(A)(10). *Toledo Heart Surgeons, Inc.* at ¶ 12. Accordingly, Accelerated's first cause of action cannot be a claim under R.C. 4165.02(A)(10). *Schmidt* quoting *Crinkley v. Dow Jones & Co.,* 67 Ill. App.3d 869, 876 (1st Dist.1978) (holding that " 'the allegedly offending statement did not disparage the *quality* of plaintiff's services * * * [but instead] appears to have imputed want of integrity to plaintiff in his business, which may be actionable under a defamation theory.' "). *See also Fairfield Mach. Co., Inc. v. Aetna Cas. & Sur. Co.,* 7th Dist. No. 2000 CO 14, 2001 Ohio App. LEXIS 5982 at 16 (Dec. 28, 2001), quoting *Schmidt*, 1996 WL 71006 at * 3 (holding that "libel refers to written defamatory words," and that common-law defamation applies "[w]hen the integrity or credit of a business has been impugned"). We conclude that despite the way it is titled on the complaint, Accelerated's essential contention under its first cause of action is not one of "commercial disparagement," but rather sounds in common-law defamation by a writing, otherwise known as libel.

{¶ 10} A similar issue affects Accelerated's second alleged cause of action, "trade libel." Here, Accelerated asserts that defendants "made false statements concerning Accelerated's liability for damage" and "published the false statement by sending a claim to Ohio counsel and commencing collection action against Accelerated." (Compl. at ¶ 15-16.) But again, Accelerated has misidentified its claim—as one treatise has observed, "[t]rade libel is not libel and slander of title is not slander," Dobbs, Hayden, Bublick, *The Law of Torts,* Section 656 (2d Ed.2011). Moreover, Ohio has not recognized a separate tort of trade

libel, but has instead dealt with all commercial falsehoods within R.C. 4165 the statutes governing Deceptive Trade Practices, and has folded the claim into commercial disparagement—the same statutory claim analyzed above. *Compare* R.C. 4165.02(A)(10) (commercial disparagement) with *Auvil v. CBS "60 Minutes,"* 67 F.3d 816, 820 (9 C.A. 1995), citing Restatement 2d, Torts, Section 623A, 651(1). ("To establish a claim of product disparagement, also known as trade libel, a plaintiff must allege that the defendant published a knowingly false statement harmful to the interests of another and intended such publication to harm the plaintiff's pecuniary interests.").

{¶ 11} In short, Accelerated's complaint asserts the same claim twice, and misidentifies that single claim both times. Notwithstanding, we will review Accelerated's complaint as one which attempts to state a cause of action for libel. To assert a claim under the common-law theory, a plaintiff must assert that (1) a false statement of fact was made regarding the integrity or credit of a business, (2) the statement was defamatory in that it impugned the integrity or credit of that business, (3) the statement was published, (4) the plaintiff suffered injury as a proximate result of the publication, and (5) the defendant acted with the required degree of fault in publishing the statement. *See, e.g., Toledo Heart Surgeons, Inc.* at ¶ 15. *See also A & B-Abell Elevator Co, Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7 (1995) (holding that " 'libel' is defined generally as a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession").

{¶ 12} While Accelerated's complaint does clearly assert that the invoice is "false"—insofar that it is not the "customer" that is responsible for the "customer damage" reflected on the invoice—it does not assert and probably cannot assert that the "statement" was "defamatory," in that it "impugned" Accelerated's "integrity or credit." The invoice merely reflects a debt alleged to be owed to Herc Rentals by Accelerated—it does not allege any unethical action by Accelerated, and it does not suggest that Accelerated is unable to pay the alleged debt.

{¶ 13} And assuming for purposes of Civ.R. 12(B)(6) analysis that Accelerated is not in any way responsible for the debt, the complaint alleges only that Accelerated "provided evidence" that the "rental in question was not authorized by Accelerated or the

responsibility of Accelerated."  We observe that Accelerated's complaint does not address the question of whether Daniel Patricio had apparent authority (as opposed to actual authority, which it does specifically address) to obtain the rental on behalf of Accelerated. *See*, *e.g., Geo-Pro Servs., Inc., v. Solar Testing Laboratories, Inc.,* 145 Ohio App.3d 514, 523-24 (10th Dist.2001) (holding that for a principal to be bound by an alleged agent with apparent authority, the evidence must show "(1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority")[1].

{¶ 14}  But the more important issue is that Accelerated has not cited and we are not aware of any authority establishing that it is defamatory for Herc Rentals to assert that Accelerated is responsible for at least some portion of the debt.  We cannot conclude that the mere statement of an alleged debt—no matter the context in which is made—can be said to be defamatory in and of itself. As one treatise has observed, while "aspersions on the plaintiff's creditworthiness have been treated as defamation * * * indebtedness by itself does not seem likely to cause members of the community to hold the plaintiff in lower esteem, unless it implies that the plaintiff was chargeable with a characteristic incompatible with its trade or business."  Dobbs, Hayden, Bublick, *The Law of Torts*, Section 536 (2d Ed.2011). While it is true that the complaint alleges appellees were aware that Accelerated was in the process of "a major financial transaction" and that as a result of the invoice it suffered financial harm, but the fact that a business allegedly has an unpaid debt does not ipso facto imply that the business has acted unethically—which is what the complaint must allege in order to state a claim of defamation.

{¶ 15} Stated another way, Accelerated's complaint actually asserts a species of "commercially injurious falsehood" that is not currently recognized under Ohio law. *Compare id.* at Section 656 (distinguishing commercial disparagement, trade libel, and

---

[1] In an affidavit Accelerated attached to its memo in response to the motion to dismiss, Accelerated's CEO stated that Daniel Patricio was "a person who had done work for me personally in the past *and in a very specicfic [sic] single instance was authorized to rent equipment for Accelerated*."  (Emphasis added.) (Todd G. Wilson Aff. at ¶ 10, attached as Ex. C to Pl's Resp. and Memo. in Opp.)  This admission establishes that it is at least a colorable question whether Daniel Patricio had apparent authority to use Accelerated's account to rent the track loader.

commercial injurious falsehoods from defamation generally) *with* R.C. 4165.02. *See also* 3 Restatement of the Law 2d, Torts, Chapter 28, Injurious Falsehood (1977) (Including Slander of Title and Trade Libel). But recognition of such a claim must be made by the Ohio General Assembly rather than this court. And Accelerated's complaint has failed to assert any actionable claim for commercial disparagement, trade libel, or common-law libel. Therefore, the trial court correctly dismissed Accelerated's complaint under Civ.R. 12(B)(6), and we accordingly overrule Accelerated's first assignment of error.

{¶ 16} In its second assignment of error, Accelerated contends that the trial court erred by not granting it leave to file an amended complaint. Civ.R. 15(A) provides in pertinent part that after a Civ.R. 12(B) motion has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires." In *Peterson v. Teodosio*, 34 Ohio St.2d 161, 175 (1973), the Supreme Court of Ohio observed:

> The mandate of Civ. R. 15(A) as to amendments requiring leave of court, is that leave "shall be freely given when justice so requires." Although the grant or denial of leave to amend a pleading is discretionary, where it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion.

*See also Terry v. Markoff*, 26 Ohio App.3d 20, 23-24 (2d Dist.1986) (quoting *Peterson*).

{¶ 17} But here, Accelerated has not tendered a proposed amended complaint at any point in this litigation, and has never filed a motion requesting leave to file such a complaint. Instead, Accelerated made a conditional request to amend its complaint in an unspecified manner ("to cure any defects") at the conclusion of its memorandum in opposition to defendants' motion to dismiss. And in this situation, that conditional request was not sufficient. Accelerated did not demonstrate that "it is possible that * * * an amended complaint, may set forth a claim upon which relief can be granted," *Peterson*, 34 Ohio St.2d at 175; did not present any basis to suggest that it could state a prima facie case against the defendants; did not tender a proposed amended complaint stating a valid cause of action against the defendants; and did not file a motion for leave to file such a tendered complaint. In light of these omissions, we cannot say that the trial court's denial of leave was an abuse

of its broad discretion over such matters. *Compare Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 123 (1991) (holding that prior to a grant of leave to file "there must be at least prima facie showing that the movant can marshal support for the new matters sought to be pleaded"). Accelerated's second assignment of error must accordingly be overruled.

{¶ 18} Having overruled Accelerated's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas in this matter.

*Judgment affirmed.*

KLATT and SADLER, JJ., concur.

_____