[Cite as *Hunter v. Rhino Shield*, 2024-Ohio-261.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Ruth G. Hunter,                               :

      Plaintiff-Appellant,          :

                                       No. 22AP-507
v.                                            :      (C.P.C. No. 14CV-1274)

Rhino Shield et al.,                          :      (REGULAR CALENDAR)

      Defendants-Appellees.         :

                                          :

D E C I S I O N

Rendered on January 25, 2024

**On brief:** *Law Offices of James P. Connors*, and *James P. Connors* for appellant. **Argued:** *James P. Connors.*

**On brief:** *Sybert, Rhoad, Lackey & Swisher, LLC*, and *Dave Lackey* for Tri-State Coating, Inc., Cleveland Coatings, Inc., Timeless Coating, Inc., and AmCoat Industries, Inc. **Argued:** *David L. Lackey.*

APPEAL from the Franklin County Court of Common Pleas

MENTEL, P.J.

{¶ 1} Plaintiff-appellant, Ruth Hunter, appeals from the decision of the Franklin County Court of Common Pleas granting the motion for sanctions under R.C. 2323.51 filed by defendants-appellees, Tri-State Coating, LLC ("Tri-State"), Cleveland Coatings, Inc. ("Cleveland"), Timeless Coatings, Inc. ("Timeless"), and AmCoat Industries, Inc. ("AmCoat"), and denying her motion for sanctions. Arguing that this appeal is frivolous, appellees have filed a motion for sanctions under App.R. 23. Mrs. Hunter and her counsel countered with two motions requesting that this court strike a number of appellees' briefs

and memoranda.  For the reasons that follow, we grant appellees' motion, deny those of Mrs. Hunter and her counsel, and affirm the judgment of the trial court.

## I. Factual and Procedural Background[1]

{¶ 2}   Ruth and David Hunter contracted with Tri-State on December 31, 2012, to have a protective ceramic coating called Rhino Shield applied to the exterior of their home. Dissatisfied with the result, they filed suit on February 6, 2014, alleging violations of R.C. 1345.02, the Ohio Consumer Sales Practices Act ("OCSPA"), and R.C. 1345.23, the Home Solicitation Sales Act ("HSSA"), as well as claims for breach of contract and negligent or intentional misrepresentation.  Apart from Tri-State and Cleveland, the Hunters named a number of other defendants in the complaint: Rhino Shield, Tri-State Coatings and Repair LLC, John D. Robertson, Jim Williams, and Rudy Pallone.  Tri-State filed an answer and third-party complaint against Alexandre Dgebuadze on March 11, 2014, alleging that he was the subcontractor who had applied Rhino Shield to the Hunters' home.

{¶ 3}   The trial court granted the Hunters leave to file an amended complaint on September 4, 2014, in which they restated the same claims while naming Timeless and AmCoat, as well as a number of additional defendants: Rhino Shield with an Indiana address, Aleksandre Dgebuadze, Rhino Shield Florida with a Florida address, and Rhino Shield with a Michigan address.

{¶ 4}   Timeless filed a motion to dismiss on October 10, 2014, arguing that the trial court lacked personal jurisdiction over it under R.C. 2307.382, Ohio's statute conferring long-arm jurisdiction over out-of-state defendants.  As the dealer with "the exclusive right to advertise, sell and install Rhino Shield products within the state of *Michigan*," the company had "absolutely no business transactions within the state of Ohio," it argued. (Emphasis sic.)  (Oct. 10, 2014 Mot. to Dismiss for Lack of Jurisdiction at 2.)  According to Timeless, Tri-State was Ohio's exclusive dealer.  "The Plaintiffs were previously informed of the fact that Timeless is an unrelated company with absolutely no connection to this case, but they filed suit against Timeless anyway."  *Id*.  The trial court granted the motion on

---

[1] This summary omits much of the events precipitating the Hunters' suit, as well as the protracted litigation history in state and federal court, in an effort to present only what is relevant to the dispute over sanctions awarded under R.C. 2323.51. The reader is referred to our previous decision in *Hunter v. Shield*, 10th Dist. No. 17AP-751, 2018-Ohio-2371, or the federal district court's summary judgment decision in *Hunter v. Shield*, 550 F. Supp.3d 500, 510 (S.D.Ohio 2021), for a more detailed presentation of the facts and procedural background.

July 12, 2016, noting that although the Hunters had the burden of demonstrating personal jurisdiction, they had "never cited * * * which provisions of R.C. 2307.382 purportedly confer jurisdiction over Timeless." (July 12, 2016 Decision & Entry at 4.)

**{¶ 5}** Cleveland filed a motion to dismiss on April 8, 2016, arguing that it had never been served with the complaint within one year of its filing, as required by Civ.R. 3(A).

**{¶ 6}** On July 13, 2016, the Hunters filed a notice of partial dismissal under Civ.R. 41(A)(1)(a) "as to *only* the following three defendants: Cleveland Coatings, Inc., Timeless Coatings LLC, and Tri-State Coatings and Repair LLC." (Emphasis sic.) (July 13, 2016 Notice of Partial Dismissal.)

**{¶ 7}** AmCoat filed a notice of improper service on January 13, 2015, stating that the plaintiffs had attempted to serve it by certified mail at an improper address and providing a "proper service address." On April 26, 2016, AmCoat filed a motion to dismiss, arguing that the trial court lacked personal jurisdiction over it under Civ.R. 4.3 and R.C. 2307.382, Ohio's long-arm statute. The trial court granted the motion and dismissed the complaint as to AmCoat on July 18, 2016.

**{¶ 8}** The Hunters filed a motion for reconsideration on July 21, 2016, which the trial court denied on April 25, 2017. The Hunters appealed and this court affirmed the trial court's decision. *Hunter v. Shield*, 10th Dist. No. 17AP-751, 2018-Ohio-2371. They then filed an application for reconsideration, an application for consideration en banc, and a motion to certify a conflict to the Supreme Court of Ohio, all of which this court denied. *Hunter v. Shield*, 10th Dist. No. 17AP-751 (Aug. 14, 2018) (memorandum decision). The Hunters appealed again, and the Supreme Court of Ohio declined jurisdiction. *Hunter v. Shield*, 154 Ohio St.3d 1432, 2018-Ohio-4670.

**{¶ 9}** The Hunters filed a final notice of dismissal under Civ.R. 41(A)(1)(a) "as to the remaining defendants Rhino Shield, James H. Williams, Rudolph J. Pallone, and Tri-State Coating, Inc." on September 22, 2017, dismissing the state court action in its entirety. They refiled their case in federal district court on September 21, 2018, where they eventually recovered damages amounting to a refund of the contract price after prevailing on their HSSA claim. *Hunter v. Shield*, 550 F. Supp.3d 500, 510 (S.D.Ohio 2021); *Hunter v. Rhino Shield*, 6th Cir. No. 21-3748, 2022 U.S. App. LEXIS 20830 *15 (July 26, 2022).

{¶ 10} After the Hunters filed the secondary voluntary dismissal and before litigation resumed in federal court, Tri-State, Cleveland, Timeless, and AmCoat filed a motion seeking sanctions and attorney fees from the Hunters and their attorney. (Sept. 25, 2017 Mot.) They sought attorney fees under R.C. 1345.09 of the OSCPA, as well as attorney fees and a sanction for frivolous conduct under R.C. 2323.51. They argued that there had "never been either a factual or legal basis for the claims brought by the Plaintiffs and their counsel against Cleveland, Timeless and AmCoat. Even when confronted with the clear facts, the Plaintiffs and their counsel continued to fight to maintain these ridiculous claims." *Id.* at 6. They argued that the actions of the Hunters and their attorney "were not only groundless when initiated, but continuously pursued in bad faith." *Id.*

{¶ 11} The Hunters responded in kind with a motion for sanctions under R.C. 2323.51 and Civ.R. 11 against AmCoat, its agent Steven C. Dominique, and their attorneys. They alleged that Mr. Dominique had filed false affidavits "in the course of an ill-advised effort to thwart service of process on AmCoat," and that all three had "committed additional multiple frivolous acts" that justified an award of sanctions. (Oct. 20, 2017 Mot. at 1.)

{¶ 12} David Hunter passed away on July 27, 2018.

{¶ 13} A magistrate held a hearing on the motions on February 19, 2020, at which Ruth Hunter and her son Mark Hunter testified. On February 3, 2021, the magistrate issued a decision containing findings of fact and conclusions of law that recommended granting the appellees' motion, awarding them $15,675 in attorney fees under R.C. 2323.51 as a sanction for frivolous conduct, and denying the Hunters' motion for attorney fees. Ruth Hunter filed objections to the magistrate's decision on February 17, 2021, and, with the trial court's leave, filed supplemental objections on June 3, 2022. On July 18, 2022, the trial court overruled the objections, adopted the magistrate's decision, and entered judgment "jointly and severally against Plaintiffs and Attorney James Connors" in the amount of $15,675 in attorney fees as a sanction under R.C. 2323.51.[2] (July 18, 2022 Decision & Entry at 3.)

---

[2] The trial court also granted in part a motion filed by appellees to strike the supplemental objections for violating the allowed limit of 15 pages, as the filing ran to 44 pages, ordering pages 16 and on stricken. The trial court also granted appellees' motion to strike an unauthorized reply brief filed by Mrs. Hunter's attorney.

{¶ 14} On appeal, Mrs. Hunter assigns the following as error:

> [I.] THE TRIAL COURT ERRED BY ADOPTING THE MAGISTRATE'S DECISION TO GRANT APPELLEES' CROSS MOTION FOR SANCTIONS AND BY OVERRULING [APPELLANT'S] OBJECTIONS
>
> [II.] THE TRIAL COURT ERRED BY ADOPTING THE MAGISTRATE'S DECISION TO DENY [APPELLANT'S] CROSS MOTION FOR SANCTIONS AND BY OVERRULING [APPELLANT'S] OBJECTIONS

{¶ 15} In addition to the merits of this appeal, the parties have filed a number of motions and responsive memoranda, which will be addressed after ruling on the assignments of error. Before addressing the assignments of error, we must clarify that although both Ruth Hunter and her son, Mark Hunter, purported to appeal from the trial court's judgment, she is the only one of the two withstanding to appeal from the judgment of the trial court and is the only appellant in this case.

{¶ 16} Civil Rule 25(E) states: "Upon the death or incompetency of a party it shall be the duty of the attorney of record for that party to suggest such fact upon the record within fourteen days after the attorney acquires actual knowledge of the death or incompetency of that party." "Once a suggestion of death has been filed pursuant to Civ.R. 25(E), the procedure in Civ.R. 25(A) applies." *Dolin v. Lupo*, 10th Dist. No. 21AP-562, 2023-Ohio-3074, ¶ 20, citing *Johnson v. Welch*, 6th Dist. No. L-86-347, 1987 Ohio App. LEXIS 7423, *4 (June 12, 1987). Civil Rule 25(A)(1) provides: "If a party dies and the claim is not thereby extinguished, the court shall, upon motion, order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and shall be served" in accordance with the rules. Civ.R. 25(A)(1). "Unless the motion for substitution is made not later than ninety days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party." *Id.*

{¶ 17} The two plaintiffs who commenced this action in the trial court were David and Ruth Hunter. (Feb. 6, 2014 Compl.; Sept. 4, 2014 Am. Compl.) After David Hunter's death on July 27, 2018, no suggestion of death appears in the record of the trial court. There is also no motion to substitute Mark Hunter for his father as a real party in interest, such

as the administrator of his estate. *See* Civ.R. 17(A) (identifying proper parties with capacity to sue, including executor or administrator). The substitution of Mark Hunter for his father on the notice of appeal does not remedy an earlier failure to timely comply with the substitution procedure in Civ.R. 25. *See Seely v. Youssef*, 6th Dist. No. L-94-280, 1995 Ohio App. LEXIS 1212, *3 (Mar. 31, 1995) (holding that an " 'estate' lacks the standing to perfect an appeal" that failed to file a motion for substitution of parties "within ninety days of the filing of the suggestion of death" as required by Civ.R. 25(A)(1)). Furthermore, because Mark Hunter did not attempt to intervene in the appeal, he "is without capacity to appeal." *State ex rel. Lipson v. Hunter*, 2 Ohio St.2d 225 (1965) (per curiam). Accordingly, Ruth Hunter is the only appellant in this appeal. *See* Civ.R. 25(A)(2) (stating that an "action does not abate" upon "the event of the death of one or more of the plaintiffs * * * in an action in which the right sought to be enforced survives only to the surviving plaintiffs"). Having clarified this issue, we turn to her assignments of error.

## II.  Standard of Review

{¶ 18} When reviewing an award of sanctions granted under R.C. 2323.51, the standard of review "depends upon whether the trial court's determination resulted from factual findings or a legal analysis." *Breen v. Total Quality Logistics*, 10th Dist. No. 16AP-3, 2017-Ohio-439, ¶ 11, citing *Bell v. Nichols*, 10th Dist. No. 10AP-1036, 2013-Ohio-2559, ¶ 18. Findings under R.C. 2323.51(A)(2)(a)(i), (iii), or (iv) require "factual determinations and are therefore given deference." *Uting v. Zimmer*, 10th Dist. No. 21AP-627, 2022-Ohio-3248, ¶ 31, citing *Breen* at ¶ 11. "Review of a trial court's factual determinations is subject to deference and will not be disturbed where the record contains competent, credible evidence to support the trial court's findings." *Breen* at ¶ 11, citing *Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 14AP-533, 2015-Ohio-3567, ¶ 35. On the other hand, a finding under R.C. 2323.51(A)(2)(a)(ii) that the conduct is frivolous because it "is not warranted under existing law" or a good-faith modification to existing law is a legal determination subject to de novo review. *Uting* at ¶ 30, citing *Breen* at ¶ 11. "Finally, where a trial court finds frivolous conduct, the decision whether to assess a penalty lies within the sound discretion of the trial court." *Breen* at ¶ 11, citing *Judd v. Meszaros*, 10th Dist. No. 10AP-1189, 2011-Ohio-4983, ¶ 19.

## III. Analysis

{¶ 19} Under R.C. 2323.51(B), "any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal." Under the statute, "any of the following" constitutes frivolous conduct:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

> R.C. 2323.51(A)(2)(a).

{¶ 20} In the first assignment of error, Mrs. Hunter asserts that the trial court's decision to grant the appellees' motion for sanctions was erroneous. She argues that the trial court did not conduct "the proper inquiry" under R.C. 2323.51 because it failed to analyze, and appellees failed to present, an "analysis or individual examination of any claim" in the complaint to justify a finding of frivolous conduct. (Merit Brief of Appellant at 6.) In support of this argument, Mrs. Hunter cites several cases in which parties filed frivolous claims. *Id.*, citing *Wiltberger v. Davis*, 110 Ohio App.3d 46, 52 (10th Dist.1996) (affirming denial of request for sanctions under R.C. 2323.51 and rejecting appellants' argument that "all fraud and conversion claims were clearly frivolous because this was simply a breach-of-contract case and nothing more")[3]; *Sigmon v. Southwest Gen. Health*

---

[3] *Wiltberger*'s holding that "the party seeking R.C. 2323.51 attorney's fees must affirmatively demonstrate that he or she incurred additional attorney's fees as a direct, identifiable result of defending the frivolous

*Ctr.*, 8th Dist. No. 88276, 2007-Ohio-2117, ¶ 14 (applying a "three-party inquiry" under R.C. 2323.51 that first asks "whether the claim was frivolous" and upholding a sanction for frivolous conduct against an attorney who filed a loss of consortium claim that "was not warranted under existing law" because it arose from an unmarried couple's relationship).

{¶ 21} In both *Wiltberger* and *Sigmon*, the question of frivolous conduct primarily centered on the legal viability the claims filed by the plaintiffs. Here, in contrast, the merits of the Hunters' case ended up being litigated in another forum where they prevailed on at least one claim. *Wiltberger* and *Sigmon* do not apply because here, appellees' arguments of frivolous conduct arose from the Hunters' assertion of claims against a bevy of defendants that had no plausible connection to what may have been otherwise meritorious claims. In other words, appellees argue that the decision to name each of them as a defendant and subsequently delay dismissing them as parties was the frivolous conduct, not the substance of the claims themselves.

{¶ 22} The definition of "conduct" under R.C. 2323.51(A)(1)(a) is broad enough to encompass such actions. The statute defines "conduct" as: "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action * * *." R.C. 2323.51(A)(1)(a). Under this definition, the conduct at issue could be described as the assertion of the claims against appellees by naming them as defendants, or the taking of any other action in the litigation by refusing to dismiss them as defendants. Such conduct may well amount to frivolous conduct under R.C. 2323.51(A)(2)(a). *See Masturzo v. Revere Rd. Synagogue*, 98 Ohio App.3d 347, 353 (9th Dist.1994) (affirming award under R.C. 2323.51 and noting that "[w]ith respect to appellant's failure to dismiss the suit in timely fashion, appellant was informed that appellee was the wrong party approximately two months before appellant finally filed a dismissal").

---

conduct in particular" has been superseded by a 1996 amendment to the statute. 110 Ohio App.3d at 54; *Mid-Ohio Mechanical, Inc. v. Eisenmann Corp.*, 5th Dist. No. 07 CA 35, 2009-Ohio-5804, ¶ 157 (stating that "reliance on *Wiltberger* and its progeny is misplaced" because the amendment to 2323.51 "removed the requirement that fees be necessitated by the frivolous conduct, and replaced it with language allowing a party to recover attorney's fees 'reasonably incurred' by a party in a civil action").

{¶ 23} Mrs. Hunter and her attorney nevertheless insist that they have been sanctioned for "unidentified conduct" and complain that "[w]ithout identifying the conduct or individually examining any claim, one cannot determine what is alleged to be frivolous conduct." (Merit Brief of Appellant at 6-7.) The first sentence of the magistrate's discussion of the grounds for sanctions, which references appellees' "request for sanctions related to the naming of AmCoat, Cleveland Coatings and Timeless Coatings as defendants," should have dispelled any confusion. (Feb. 3, 2021 Mag.'s Decision at ¶ 18.)

{¶ 24} In the paragraphs that follow, the magistrate discussed in detail the reasons for finding the conduct frivolous. She foregrounded her analysis by observing that, in spite of testimony from Mrs. Hunter and Mark Hunter "question[ing] who Tri-State was and why it was involved," the question of who to name as a defendant should have been obvious from the start:

> It is unclear why Plaintiffs were so confused because the contract itself prominently states "By Tri-State Coating, Inc." immediately below the Rhino Shield logo at the top of the front page, and further identifies Tri-State as the entity that will be preparing the surface for the painting, the entity to contact to cancel the agreement, and the entity to whose collection costs and attorney fees the customer may be liable for in the event Tri-State files suit related to the transaction.
>
> Id.

{¶ 25} In spite of this confusion, the Hunters and their attorney did manage to name Tri-State as a defendant. (Feb. 6, 2014 Compl.; Sept. 4, 2014 Am. Compl.) The magistrate noted, however, that "this confusion allegedly caused Plaintiffs' son to conduct various online searches and that is how he came across AmCoat, Timeless Coatings, and Cleveland Coatings." (Mag.'s Decision at ¶ 19.) The testimony of Mark Hunter, who is not an attorney, is cited extensively to justify the decision to name these entities as defendants. (Merit Brief of Appellant at 11-13.) Because "he was unable to determine who performed the work and supplied the product," he conducted Google searches for Rhino Shield that returned results for AmCoat, who he called. *Id.* at 12. However, as the magistrate noted, even "if a corporation merely has a similar name as another corporation, or if its address is next door to another similar sounding corporation, but if neither corporation has any ownership interest in the other, that does not mean the corporate veils of the two can be pierced such that one can be held liable for the conduct of the other." (Mag.'s Decision at ¶ 19, citing

*Minno v. Pro-Fab, Inc.*, 121 Ohio St.3d 464, 2009-Ohio-1247.) "In an action founded upon a contract, therefore, it is improper for one party to seek relief against a person who has neither entered into that contract, nor agreed to be bound by its terms." *Frantz v. United Property Mgt.*, 6th Dist. No. S-85-10, 1985 Ohio App. LEXIS 8878, *5-6 (Oct. 18, 1985). Notably absent from Mrs. Hunter's briefing is any argument that the decision to sue the unrelated entities was "supported by a good faith argument for an extension, modification, or reversal of" these principles of "existing law, or * * * a good faith argument for the establishment of new law." R.C. 2323.51(A)(2)(a)(ii).

**{¶ 26}** With regard to AmCoat, the magistrate found the following:

> Plaintiffs have failed to establish that AmCoat, a Florida corporation, has any ownership interest in any of the other defendants or had any contact with Plaintiffs. Although testimony was presented indicating Plaintiff's son reached out to the CEO of AmCoat after the contract was entered into and the work was performed, that is not the kind of contact that would provide legal justification for naming AmCoat as a defendant in this case.

> (Mag.'s Decision at ¶ 20.)

**{¶ 27}** Two arguments for suing AmCoat are raised. First, "[t]he Hunters maintained the action against AmCoat in part due to its warranties conveyed to them." (Merit Brief of Appellant at 14.) This court has previously examined the Hunters' amended complaint and failed to identify any "alleged causes of action related to the 25-year transferrable warranty." *Hunter v. Shield*, 10th Dist. No. 17AP-751, 2018-Ohio-2371, ¶ 35. We reasoned:

> The warranty, which is attached to the amended complaint, does not include appellee's name, specifically states it is only valid when the material is applied in accordance with the manufacturer's approved methods (which appellants allege did not happen), and does not extend beyond the replacement of the coating material, which is not sought by appellants in their suit. Moreover, there is no allegation that appellants demanded appellee replace the coating material pursuant to the warranty and that appellee subsequently refused to do so.

> Id.

**{¶ 28}** Even though there was no basis for suing AmCoat based on the warranty, the magistrate chose not to impose a sanction for having named it as a defendant originally,

but only allowed for attorney fees "incurred" after AmCoat filed its motion to dismiss. (Mag.'s Decision at ¶ 20.)

{¶ 29} The second rationale the Hunters give for suing AmCoat is that the magistrate "incorrectly found that AmCoat did not own the other defendants (even though it in fact was the owner of Rhino Shield) * * *." (Merit Brief of Appellant at 15.) Again, the procedural history of this case demonstrates that the magistrate was not incorrect and that the matter is settled. We previously stated: "Although appellants essentially contend Tri-State, the company who appellants directly contracted with to do the work on their house and promised to repair the work, is one in the same as [AmCoat], information provided by appellants themselves, such as the dealership agreement and certificate of incorporation, specifically state otherwise." *Hunter*, 2018-Ohio-2371, at ¶ 33. The Sixth Circuit Court of Appeals also stated the following:

> To support their theory that defendants are part of a joint venture, the Hunters spill much ink making conclusory allegations that AmCoat owner Dominique, Tri-State owner Williams, Tri-State sales representative Pallone, and subcontractors Dgebuadze and Robertson joined to create a business enterprise called "Rhino Shield" to avoid liability for falsifying information to sell Rhino Shield coating to customers. But what the Hunters are missing, as the district court noted, is any evidence showing that defendants intended and agreed to be "coadventurers, with an equal right of control" over a "Rhino Shield" enterprise. * * * The Hunters had more than eight years of litigation to produce this evidence, and their failure to do necessitates dismissal of their joint-venture theory of liability.

> *Hunter v. Rhino Shield*, 6th Cir. No. 21-3748, 2022 U.S. App. LEXIS 20830, *24 (July 26, 2022).

{¶ 30} The magistrate then turned to Timeless, finding that suing that entity was frivolous conduct because: "Plaintiffs have likewise failed to establish that Timeless Coatings, a Michigan corporation, has any ownership interest in any of the other defendants or any contact with Plaintiffs." (Mag.'s Decision at ¶ 21.) Mrs. Hunter asserts that the magistrate's "focus on ownership as justification for frivolous conduct as to Timeless was incorrect," and again attempts to relitigate the joint venture theory. (Merit Brief of Appellant at 16.) This argument ignores the crucial element of the magistrate's

finding, a lack of "contact with Plaintiffs," some of which is a necessary prerequisite to any injury or breach that might form the basis for liability. (Mag.'s Decision at ¶ 21.)

{¶ 31} The magistrate also concluded that suing Cleveland was frivolous because "that entity was not even in existence at the time the contract was entered into or even when the work was performed." (Mag.'s Decision at ¶ 22.) The only response to the magistrate's logical observation is that "the incorporation date had nothing to do with Jim Williams using the entity name to conduct business as Rhino Shield at the same time he was selling and providing services to the Hunters." (Merit Brief of Appellant at 16-17.) Putting aside for a moment the fact that the only entity the Hunters did business with was Tri-State, Cleveland's incorporation date had everything to do with its capacity to be sued. " 'A corporation may sue and be sued,' but the capacity to sue is dependent upon the legal existence of the corporation." *Grimmer v. Shirilla*, 8th Dist. No. 103921, 2016-Ohio-5423, ¶ 31, quoting R.C. 1701.13 (A).

{¶ 32} The magistrate allowed that there may have been "some confusion initially as to who all the parties, entities or individuals involved were," but, nevertheless, such confusion "does not explain or excuse Plaintiffs' continued insistence to retain them as defendants after it was pointed out that they had no involvement or ownership interest in any of the other defendants." (Mag.'s Decision at ¶ 23.) The magistrate characterized these actions as "overzealous" when concluding that it amounted to frivolous conduct under R.C. 2323.51. Given that the statute "was designed to chill egregious, overzealous, unjustifiable, and frivolous action," we see no error in the trial court's decision to adopt the magistrate's recommendation and impose sanctions for frivolous conduct. *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, ¶ 15, quoting *Ohio Power Co. v. Ogle*, 4th Dist. No. 12CA14, 2013-Ohio-1745, ¶ 29, quoting *Hickman v. Murray*, 2d Dist. No. CA15030, 1996 Ohio App. LEXIS 1028, *5 (Mar. 22, 1996). The first assignment of error is overruled.

{¶ 33} In the second assignment of error, Mrs. Hunter argues that the trial court erred by adopting the magistrate's decision to overrule her motion for sanctions and her objections to the magistrate's decision. She and her attorney argue that AmCoat, its agent Steven C. Dominique, and their attorney "committed frivolous conduct by, among other things, making several provably false statements, submitting two false affidavits, and filing

frivolous motions and motions responses based on those false statements and false affidavits in the course of an ill-advised effort to thwart service of process on AmCoat to avoid default judgment." (Merit Brief of Appellant at 46.)

{¶ 34} An award for frivolous conduct "may be made against a party, the party's counsel of record, or both." R.C. 2323.51(B)(4). Neither Mr. Dominique nor AmCoat were ever parties to this litigation, as the magistrate noted. (Mag.'s Decision at ¶ 21.) The trial court never obtained personal jurisdiction over AmCoat, which "entered an appearance solely for the purpose of moving the court to dismiss the case against it." *Hunter v. Shield*, 10th Dist. No. 17AP-751, 2018-Ohio-2371, ¶ 10. Accordingly, there is no legal basis for sanctions under R.C. 2323.51 against Mr. Dominique or AmCoat.

{¶ 35} The magistrate explained at length why, "[a]ssuming, arguendo, that sanctions somehow could be awarded against a non-party or an entity that is not within the court's long-arm jurisdiction, * * * sanctions are still not warranted because the conduct of Steven Dominique as an agent of AmCoat, and the conduct of counsel in assisting him in filing the notices of improper service, do not rise to the level of willful violation or frivolous conduct to warrant sanctions pursuant to either Civ.R. 11 or R.C. 2323.51." (Mag.'s Decision at ¶ 11.) The magistrate detailed why, for the sake of argument, the allegations that Mr. Dominique had attempted to evade service had no basis in fact, but she was not required to do so when R.C. 2323.51(B)(4) does not allow for the imposition of sanctions on a nonparty. *Id*. at ¶ 13-14. And Mrs. Hunter's attorney makes no argument to extend, modify, or establish new law allowing such sanctions, much less the "good faith" one required to recognize any error in the trial court's ruling. R.C. 2323.51(A)(2)(a)(ii). No such argument was made before the magistrate or in this appeal. There was no error or abuse of discretion in denying the motion for sanctions of Mrs. Hunter and her attorney.

{¶ 36} Finally, we note that "[t]he notices" that Mrs. Hunter and her attorney claim are riddled with fraud "specifically provided the address for AmCoat where the corporation could be served." (Mag.'s Decision at ¶ 12.) This notice was filed on January 13, 2015, which we previously recognized when affirming the trial court's finding that service was never obtained on AmCoat: "On January 13, 2015, appellee filed a notice of improper service, indicating that '[t]he proper service address for AmCoat is 4012 West Commons Drive, Unit 116, Destin, Florida 32541, which is the address listed with the Florida Department of State,

Division of Corporation.' " *Hunter*, 2018-Ohio-2371, at ¶ 8. The fact that AmCoat and its attorney specifically provided this notice to the plaintiffs undermines the suggestion that they engaged in a conspiracy to avoid service. The second assignment of error is overruled.

{¶ 37} We turn finally to the parties' pending motions. First, Mrs. Hunter's counsel filed a motion to strike appellees' brief in response to the merits brief "in its entirety," citing App.R. 9(A)(1) and Local Rule 7 and 9.1. (Jan. 30, 2023 Mot. to Strike Appellees' Brief at 1.) Counsel argues that the appellees' brief relies on "prohibited exhibits" to "make extensive factual allegations and arguments" as the basis for striking it. *Id.* The exhibits in question are copies of *Hunter v. Shield*, 550 F. Supp.3d 500, 510 (S.D.Ohio 2021) and *Hunter v. Rhino Shield*, 6th Cir. No. 21-3748, 2022 U.S. App. LEXIS 20830 (July 26, 2022).

{¶ 38} "While no appellate rule specifically governs motions to strike, Civ.R. 12(F) permits a court to strike 'any redundant, immaterial, impertinent or scandalous matter.' " *Matthews v. D'Amore*, 10th Dist. No. 05AP-1318, 2006-Ohio-5745, ¶ 68. *See also State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, ¶ 26 (applying Civ.R. 12(F) standard when ruling on a motion to strike).

{¶ 39} Appellate Rule 9(A)(1) defines the record on appeal as "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases." Local Rule 9.1 states: "The court of appeals does not accept new evidence on appeal that is offered to expand upon the record of evidence heard by the trial court, or otherwise offered to support or rebut the adjudicative facts determined by the trial court."[4]

{¶ 40} Publicly available decisions of another court in no way qualify as "redundant, immaterial, impertinent or scandalous matter" under Civ.R. 12(F). *Matthews* at ¶ 68. Notably, counsel does not address this standard, which must be met to grant a motion to strike. A federal district or appellate court opinion may not be part of the record as defined under App.R. 9(A)(1), but such an opinion is a matter of public record and is readily accessible. It is not clear what the purpose of striking such material from the briefs would achieve because the federal court decisions could subsequently be accessed through legal research.

---

[4] Local Rule 7, also cited in support of the motion to strike, generally governs motion practice in this court.

{¶ 41} Additionally, this court's Local Rule 8(E) states: "Documents such as the trial court decision and judgment entry, lower court pleadings, evidentiary materials, and generally accessible legal authority need not be attached to a brief." A party's noncompliance with this mild statement of discouragement is not grounds for granting a motion to strike.

{¶ 42} Counsel asserts that "repeated references to the exhibits 'Federal Decision' and 'Federal Appellate Decision' " in appellees' brief "as the source for its statement of facts" justifies striking the brief in its entirety. (Jan. 30, 2023 Mot. to Strike Appellees' Brief at 13.) Again, counsel fails to address the relevant standard under which only "redundant, immaterial, impertinent or scandalous matter" may be stricken under Civ.R. 12(F). The motion to strike is overruled.

{¶ 43} The same arguments dominate the other motion to strike filed February 13, 2023, which asks this court for an order striking appellees' memorandum contra the motion to strike and their reply in support of their motions for sanctions against Mrs. Hunter and counsel, both filed on February 6, 2023. Finding this request without merit and not supported by the applicable Civ.R. 12(F) standard, the motion to strike is overruled.

{¶ 44} Finally, we address appellees' motion for sanctions under App.R. 23. For a number of reasons, appellees contend that the present appeal is frivolous. Citing this court's previous holding that trial court never obtained jurisdiction over AmCoat, they point to the extensive briefing of Mrs. Hunter's counsel ignoring this holding and arguing that sanctions should have been awarded against AmCoat and its owner, Mr. Dominique. (Dec. 21, 2022 Mot. for Sanctions at 2.) Appellees assert that the brief filed by her counsel contains a number of "intentional misstatements," including that Timeless conducts AmCoat's business in Ohio, although the magistrate found otherwise; that no company filed a fictitious name registration for Rhino Shield, although the district court stated that the fact was undisputed; that the Hunters made a claim under Rhino Shield's product warranty, although several courts have found otherwise; misrepresentations about documents produced in discovery; and that a 2002 consent decree issued by the Federal Trade Commission applied to appellees even though their names are not mentioned in it and they were not parties to that proceeding. *Id*. at 3-7.

{¶ 45} In response, counsel for Mrs. Hunter argues that res judicata does not apply to this appeal because it only concerns a motion for sanctions, not the issues raised in previous appeals, and points out that the federal district court denied AmCoat's motion to dismiss. (Jan. 30, 2023 Memo Contra at 7-8.) Counsel also cites a number of exhibits to counter appellees' accusations of fabricating facts in over forty pages of response that, for the most part, restate the arguments from the merits brief. *Id.* at 12-53.

{¶ 46} Appellate Rule 23 states: "If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs." "A frivolous appeal under App. R. 23 is essentially one which presents no reasonable question for review." *Tallbott v. Fountas*, 16 Ohio App.3d 226 (10th Dist.1984). *See also Smith-Evans v. Lavelle*, 10th Dist. No. 09AP-787, 2010-Ohio-1074, ¶ 15 (citing *Talbott*). "The purpose of sanctions under App.R. 23 is to compensate the non-appealing party for the expense of having to defend a spurious appeal and to help preserve the appellate calendar for cases worthy of consideration." *Smith-Evans* at ¶ 15.

{¶ 47} It is not necessary to resolve the parties' opposing interpretations of the evidence supporting the trial court's decision to conclude that the present appeal is frivolous. The positions taken by Mrs. Hunter and her attorney in prosecuting this appeal were not grounded in fact or law. "The law-of-the-case doctrine provides that 'the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' " *Browne v. Artex Oil Co.*, 158 Ohio St.3d 398, 2019-Ohio-4809, ¶ 11, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). Settled legal questions that were the law of the case were treated as unresolved and subject to dispute. The insistence that AmCoat was a proper party to be sued when this court previously determined that the trial court had never obtained personal jurisdiction over it and no warranty claim was pleaded that might implicate it as a manufacturer demonstrates a disregard for previous decisions of this court. *See Tessler v. Ayer*, 108 Ohio App.3d 47, 57 (1st Dist.1995) (awarding sanctions under App.R. 23 against appellant for an appeal that was "clearly a 'rehashing' of issues already argued" in two previous appeals). Additionally, in this appeal, counsel for Mrs. Hunter failed to make any "good faith argument for an extension, modification, or reversal of existing law, or * * * a

good faith argument for the establishment of new law" to justify the decision to name multiple entities as defendants to an action based on breach of contract who were not parties to the contract, one of which was not even in existence at the time the parties formed it. R.C. 2323.51(A)(2)(a)(ii). Without making any such argument when contesting the trial court's decision, there was no reasonable grounds for appealing it.

{¶ 48} Because there were no reasonable grounds for this appeal, we grant appellees' motion for sanctions under App.R. 23. Based on the affidavit of appellees' counsel itemizing 14.7 billable hours of work expended in response to this appeal (with no additional work requested for responding to the motions to strike) at a rate of $250, we find that the requested award is reasonable. The response to the motion for sanctions contains no argument contesting the reasonableness of this amount. Accordingly, Mrs. Hunter is ordered to pay appellees $3,675.00.

## IV. Conclusion

{¶ 49} For the foregoing reasons, the two assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed. Additionally, appellant's motions to strike are overruled and appellees' motion for sanctions under App.R. 23 is granted.

*Judgment affirmed.*

DORRIAN and BEATTY BLUNT, JJ., concur.

_____